1  **GREGORY T. MURPHY**
California State Bar No. 245505
2  **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
3  San Diego, CA 92101-5008
(619) 234-8467/Fax: (619) 687-2666
4  E-Mail: gregory_murphy@fd.org

5  Attorneys for Alejandro Villa-Anquiano

6

7

8                  UNITED STATES DISTRICT COURT

9                SOUTHERN DISTRICT OF CALIFORNIA

10               **(HONORABLE WILLIAM Q. HAYES)**

11  UNITED STATES OF AMERICA,           )   Case No. 08CR1550-WQH
                                        )
12              Plaintiff,              )   DATE:        August 11, 2008
                                        )   TIME:        2:00 p.m.
13  v.                                  )
                                        )   **NOTICE OF MOTION AND MOTION TO**
14  ALEJANDRO VILLA-ANQUIANO,           )   **DISMISS THE INDICTMENT DUE TO AN**
                                        )   **INVALID DEPORTATION**
15              Defendant.              )
    _____ )
16

17  TO:    KAREN P. HEWITT, UNITED STATES ATTORNEY; AND
         JEFFREY D. MOORE, ASSISTANT UNITED STATES ATTORNEY:
18

19         PLEASE TAKE NOTICE that, on August 11, 2008, at 2:00 p.m., or as soon thereafter as counsel

20  may be heard, the defendant, Alejandro Villa-Anquiano, by and through his counsel, Gregory T. Murphy and

21  Federal Defenders of San Diego, Inc., will ask this Court to enter an order dismissing the indictment for due

22  to an invalid deportation.

23                        **MOTIONS**

24         The defendant, Alejandro Villa-Anquiano, by and through his attorneys, Gregory Murphy and

25  Federal Defenders of San Diego, Inc., pursuant to the United States Constitution, the Federal Rules of

26  Criminal Procedure, and all other applicable statutes, case law and local rules, hereby moves this Court for

27  an order dismissing the indictment due to an invalid deportation.

28  / / /

1    This motion is based upon the instant motion and notice of motion, the attached statement of facts

2   and memorandum of points and authorities, and all other materials that may come to this Court's attention

3   at the time of the hearing on this motion.

4                                                              Respectfully submitted,

5

6   DATED:        July 30, 2008                          /s/ Gregory T. Murphy
                                                         **GREGORY T. MURPHY**
7                                                        Federal Defenders of San Diego, Inc.
                                                         Attorneys for Alejandro Villa-Anquiano
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 | **GREGORY T. MURPHY**
California State Bar No. 245505
2 | **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
3 | San Diego, CA 92101-5008
(619) 234-8467/Fax: (619) 687-2666
4 | E-Mail: gregory_murphy@fd.org

5 | Attorneys for Alejandro Israel Villa-Anquiano

6

7

8 |                    UNITED STATES DISTRICT COURT

9 |                  SOUTHERN DISTRICT OF CALIFORNIA

10 |                  **(HONORABLE WILLIAM Q. HAYES)**

11 | UNITED STATES OF AMERICA,            )   Case No. 08CR1550-WQH
                                        )
12 |              Plaintiff,             )   DATE:        August 11, 2008
                                        )   TIME:        2:00 p.m.
13 | v.                                  )
                                        )   **MEMORANDUM OF POINTS AND**
14 | ALEJANDRO ISRAEL VILLA-ANQUIANO,    )   **AUTHORITIES IN SUPPORT OF MR. VILLA-**
                                        )   **ANQUIANO'S MOTION**
15 |              Defendant.             )
     _____    )

16

17 |                                    **I.**

18 |                       **SUMMARY OF ARGUMENT**

19 |          Mr. Villa-Anquiano's 1997 deportation proceeding was fundamentally flawed in two ways.  First,

20 | the Immigration Judge failed to elicit knowing and intelligent waivers of Mr. Villa-Anquiano's right to counsel

21 | and appeal.  Second, the immigration judge inaccurately advised Mr. Villa-Anquiano he was ineligible for

22 | relief.

23 |          These errors render the deportation proceeding invalid and compel dismissal of the indictment here.

24 | When an immigration proceeding is tainted by a "mass silent waiver" of the right to counsel, the respondent

25 | need not show he was prejudiced by the procedural error.  Notably, the Ninth Circuit has never found such

26 | a proceeding valid.  Furthermore, under the categorical analysis, the record of conviction was inadequate to

27 | sustain either charge of deportability. Finally, even if Mr. Villa-Anquiano was deportable under either charge,

28 | / / /

he was eligible for relief from deportation under former INA § 212(c), INA 212(h) and through his relationship with the United States citizen mother of his children.

Because Mr. Villa-Anquiano's immigration proceeding did not satisfy the constitutional requirements of due process, it cannot be used as an element in this criminal prosecution. Accordingly, the indictment should be dismissed.

## II.

## FACTS

**A.     Personal and Immigration History**

Mr. Villa-Anquiano entered the United States without inspection when he was approximately one year old. Exhibits 1-2, Declarations of Mr. Villa's father and mother, Jose Villa and Patricia Villa. In high school, Mr. Villa-Anquiano became romantically involved with his present wife. Exhibit 3, Declaration of Angelina Flores. They have four children, all citizens of the United States. *Id*. Additionally, Mr. Villa and his wife have raised his first child, who is the biological child of another woman. Exhibit 4, Birth Certificate of Alejandro Israel Villa, Jr.

In 1987, Mr. Villa-Anquiano's status was adjusted to lawful permanent resident. Exhibit 5, Mr. Villa-Anquiano's Permanent Resident Card. According to discovery, on September 27, 1993, Mr. Villa entered a plea pursuant to *People v. West*, 477 P.2d 409 (Cal. 1970), to voluntary manslaughter in violation of Cal. Pen. Code §192(a). Exhibit 6, Plea of Guilty/No Contest. He received a stipulated seven year sentence--the mid-term of the manslaughter range plus an additional year increase for vicarious arming with a gun pursuant to Cal. Pen. Code § 12022(a)(1). *Id*. Of that period, Mr. Villa-Anquiano served fewer than four years in custody.

Discovery reveals no evidence of any other convictions.

**B.     The Order to Show Cause**

On January 19, 1994, the Immigration and Naturalization Service issued an Order to Show Cause why Mr. Villa-Anquiano should not be deported from the United States. Exhibit 7. The Order to Show Cause alleged:

1.     That Mr. Villa was not a citizen or national of the United States;

2.     That he is a citizen and national of Mexico;

3.    That he entered the United States at or near San Ysidro on or about February 1986;

4.    That he was not then admitted by an immigration office;

5.    That on March 9, 1989, his status was adjusted to that of a permanent resident;

6.    That he was convicted, on September 27, 1993 of voluntary manslaughter with a firearm, to wit a .38 caliber revolver, committed on February 28, 1993; and

7.    That he was sentenced to confinement for a period of seven years for that offense.

See Exhibit 5, Order to Show Cause.

Based on these allegations, the government charged that Mr. Villa-Anquiano was subject to deportation on two grounds:

1.    He had been convicted of an aggravated felony as defined in section 1101(a)(43) of the Act; and

2.    He had been convicted of crime involving a firearm or destructive device as defined in section 18 U.S.C. § 921(a).

*Id*.

**C.    The Immigration Hearing**

Mr. Villa appeared before the Immigration Judge ("IJ") with a group of other respondents on January 27, 1997. Exhibit 8, Transcript of Immigration Proceeding. After taking roll, the IJ explained to the group that the Immigration and Naturalization Service "charges . . . you should be deported because you are not a citizen or national of the United States and that you violated one or more of this country's immigration laws." *Id*. at 2. The IJ warned "if you admit all the allegations . . . you could be deported," but indicated he would consider whether some sort of relief nonetheless was available for each respondent. *Id*. at 3.

The IJ then explained to the assembled respondents their rights in immigration proceedings. *Id*. at 3-6. First, he told the group they had a right to counsel at no cost to the government. *Id*. at 4. The IJ asked anyone who did not understand to raise a hand. *Id*. No one did. The IJ then asked anyone who needed time to get an attorney to raise a hand. *Id*. at 5.

Lastly, the IJ explained the rights to present evidence, to examine the government's evidence, and to appeal an adverse decision. *Id*. at 5-6.

/ / /

1    Because he spoke English, Mr. Villa was the first respondent to be called individually. The IJ read

2 the charges in the Order to Show Cause ("OSC"), defining the term "aggravated felony" as a "crime of violence

3 for which the sentence was one year or more."[1]  *Id*. at 9.  He then asked him whether the allegations in the

4 OSC were true:

5    COURT:    Are you a citizen or national of the United States?

6    MR. VILLA:  I am a national.

7    COURT:    Of the United States?

8    MR. VILLA:  Yes.  I have a greencard.

9    COURT:    OK.  A permanent resident isn't a national.  A national is someone who was born in

10   a territory or possession of the United States like Puerto Rico or the Virgin Islands. Are you a citizen

11   or national of the United States?

12   MR. VILLA:  No.

13   COURT:    Ok.  Are you a native and citizen of Mexico?

14   MR. VILLA:  Yes.

15   COURT:    Did you enter the United States near San Ysidro, California in February 1986 without

16   inspection?

17   MR. VILLA:  Yes

18   COURT:    On March 9, 1989, did you become a permanent resident?

19   MR. VILLA:  Yes.

20   COURT:    On September 27, 1993 were you convicted of voluntary manslaughter with a firearm,

21   a .38 caliber revolver and sentenced to 7 years?

22   MR. VILLA:  Yes.

23 *Id*. at 10. Based on these admissions, the IJ found Mr. Villa deportable as charged.

24 / / /

25 / / /

26 ─────────────────

27      [1]In fact, at the time INS issued the OSC to Mr. Villa-Anquiano, the term "aggravated
   felony" meant "any crime of violence (as defined in section 16 of Title 18, not including a purely
28 political offense) for which the term of imprisonment imposed (regardless of any suspension of
   such imprisonment) is at least 5 years."  See 8 U.S.C. § 1101(a)(43) (1990).

1   The IJ then asked Mr. Villa a series of questions designed to test his eligibility for relief.[2]  *Id.* at 9-11.

2   In response, Mr. Villa explained that his father was a United States citizen, and that his mother had taken the

3   naturalization exam that same morning.  *Id.* at 10.  He stated that he was unmarried, but had a four-year-old

4   United States citizen child.  *Id.* at 11.   Mr. Villa stated he had served approximately three years for the

5   voluntary manslaughter conviction.  *Id.*

6   The IJ concluded no relief was available and ordered Mr. Villa-Anquiano deported to Mexico.  *Id.*

7   at 12.   The IJ inquired if Mr. Villa accepted his deportation or wished to appeal.  Mr. Anquiano replied:

8   "deport." *Id.*

9   The IJ never individually addressed Mr. Villa-Anquiano regarding his right to counsel.

10  **III.**

11  **THIS COURT SHOULD DISMISS THE INDICTMENT DUE TO AN INVALID DEPORTATION**

12  "In a criminal prosecution under § 1326, the Due Process Clause of the Fifth Amendment requires

13  a meaningful opportunity for judicial review of the underlying deportation." *United States v. Zarate-Martinez*,

14  133 F.3d 1194, 1197 (9th Cir. 1998).  A defendant such as Mr. Villa-Anquiano, who is charged with illegal

15  reentry under § 1326, has a Fifth Amendment right to attack his removal order collaterally because the

16  removal order serves as a predicate element of his conviction.  *United States v. Mendoza-Lopez*, 481 U.S. 828,

17  837-38 (1987) ("Our cases establish that where a determination made in an administrative proceeding is to

18  play a critical role in the subsequent imposition of a criminal sanction, there must be some meaningful review

19  of the administrative proceeding.").  *See also United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1047-48 (9th

20  Cir. 2004) (citing *Zarate-Martinez* and *Mendoza-Lopez* for these principles).

21  To successfully collaterally attack his deportation, Mr. Villa-Anquiano must demonstrate that: 1) he

22  exhausted all administrative remedies available to him to appeal his removal order; 2) the underlying removal

23  proceedings at which the order was issued improperly deprived him of the opportunity for judicial review;

24  and, 3) the entry of the order was fundamentally unfair.  8 U.S.C. § 1326(d); *Ubaldo-Figueroa*, 364 F.3d at

25  1048.  "An underlying removal order is 'fundamentally unfair' if:  '1) a defendant's due process rights were

26  / / /

27  —————————————

28      [2]The transcript suggests the IJ had considered potential relief at some earlier time.
Defense counsel has not received a recording of any earlier hearing.

5

1  violated by defects in his underlying deportation proceeding, and 2) he suffered prejudice as a result of the

2  defects.'" *Id.* at 1048 (citing *Zarate-Martinez*, 113 F.3d at 1197) (brackets omitted).

3       Importantly, although Mr. Villa-Anquiano carries the initial burden on the issue of prejudice, once

4  Mr. Villa-Anquiano makes a prima facie showing of prejudice, ***the burden shifts to the government to***

5  ***demonstrate that the procedural violation could not have changed the proceedings' outcome***. *United States*

6  *v. Gonzalez-Valerio*, 342 F.3d 1051, 1054 (9th Cir. 2003) (emphasis added).  As explained below, Mr. Villa-

7  Anquiano can demonstrate each of the elements necessary for this Court to sustain his collateral attack

8  **A.        Mr. Villa-Anquiano Is Exempt from the Exhaustion Requirement**

9       Mr. Villa-Anquiano's appellate waiver was invalid because:  1) the IJ failed to elicit a knowing and

10  intelligent waiver of the right to counsel; 2) the IJ's advisals to him regarding his appellate rights were

11  inadequate; and 3) the IJ failed to inform Mr. Villa-Anquiano of potential relief from deportation for which

12  he was eligible.  Accordingly, Mr. Villa-Anquiano is exempt from the exhaustion requirement.

13       Had Mr. Villa-Anquiano "validly waived the right to appeal [his removal order] during the

14  deportation proceedings," he would be barred under 8 U.S.C. § 1326(d) from collaterally attacking his

15  underlying removal order as a defense to the section 1326 charge.  *Ubaldo-Figueroa*, 364 F.3d at 1048

16  (quoting *United States v. Muro-Inclan*, 249 F.3d 1180, 1182 (9th Cir. 2001)).  However, the exhaustion

17  requirement cannot bar collateral review when—as in this case—the waiver of the right to administrative

18  appeal did not comport with due process.  *Id.*

19       **1.        Mr. Villa-Anquiano Did Not Knowingly and Intelligently Waive His Right to Counsel**

20       A respondent in immigration proceedings has an absolute right to counsel at no cost to the

21  government.  *See Ram v. Mukasey*, 529 F.3d 1238, 1241 (9th Cir. 2008) ("Although there is no Sixth

22  Amendment right to counsel in an immigration hearing, Congress has recognized it among the rights

23  stemming from the Fifth Amendment guarantee of due process that adhere to individuals that are the subject

24  of removal proceedings.")(citing *Tawadrus v. Ashcroft*, 364 F.3d 1099, 1103 (9th Cir.2004)).  Accordingly,

25  the Ninth Circuit has "reiterated many times that an alien cannot appear *pro se* without a knowing and

26  voluntary waiver of the right to counsel." *Id.* at 1242.  This means that IJ's, "at a minimum..., must [ (1) ]

27  inquire whether the petitioner wishes counsel, [ (2) ] determine a reasonable period for obtaining counsel, and

28  [ (3) ] assess whether any waiver of counsel is knowing and voluntary." *Id.* at 1241.  Moreover, the IJ must

1  address the respondent *individually* regarding his waiver of the right to counsel. *See United States v.*

2  *Ahumada-Aguilar*, 295 F.3d 943,  949-50 (9th Cir. 2002) (noting that a "mass silent waiver" fails to elicit a

3  considered and intelligent waiver of the right to counsel.).  At the time of Mr. Villa-Anquiano's deportation

4  proceeding this obligation to discuss the right to counsel with each respondent individually was codified at

5  8 C.F.R. § 242.16(a) (1991) (*removed and reserved* 62 Fed.Reg. 10312, 10382 (Mar. 7, 1997)).[3]  The Ninth

6  Circuit has specifically held that a mass waiver proceeding violates the requirements of this regulation.

7  *Ahumada-Aguilar*, 295 F.3d at 947 ("[A]cceptance of an implicit waiver of the right to counsel is

8  unequivocally inconsistent with the duty of an IJ to 'require the respondent to state then and there whether he

9  requires representation.'").

10       In Mr. Villa-Anquiano's case, the IJ employed exactly the "mass silent waiver" procedure the Ninth

11  Circuit deemed invalid in *Ram* and *Ahumada-Aguilar*. Rather than address each respondent individually as

12  required by the Fifth Amendment and then-existing regulation, the IJ simply asked any respondent in the

13  assembled group who did not understand his right to legal representation to raise a hand.  Then, when no one

14  did, the IJ asked anyone who needed more time to get an attorney to raise a hand.  The IJ never elicited an

15  affirmative waiver of counsel from any respondent, and never assessed whether any implicit waiver was

16  "knowing and voluntary." This procedure deprived Mr. Villa-Anquiano of his right to counsel.

17       The IJ's error excuses Mr. Villa-Anquiano's failure to exhaust remedies.  Having failed to elicit a

18  knowing and intelligent waiver of the right to counsel, the IJ could not then elicit a knowing and intelligent

19  waiver of the right to appeal.  Any waiver of the right to appeal was made without the contributions of

20  counsel--who certainly would have urged Mr. Villa-Anquiano to press an appeal-- and without an affirmative

21  decision by Mr. Villa-Anquiano to accept the risk of proceeding without counsel.

22       **2.    Mr. Villa-Anquiano Was Inadequately Advised Regarding the Appellate Waiver**

23       A waiver of the right to appeal a removal order does not comport with due process when it is not

24  "considered and intelligent."  *Id.  See also United States v. Pallares-Galan*, 359 F.3d 1088, 1096 (9th Cir.

25

26       [3]"The Immigration Judge shall advise the respondent of his right to representation, at no
27  expense to the Government, by counsel of his own choice authorized to practice in the
    proceedings and require him to state then and there whether he desires representation; [and]
28  advise the respondent of the availability of free legal services programs ... in the district where
    the deportation hearing is being held[.]"  8 C.F.R. § 242.16(a)

1  2004); *United States v. Leon-Paz*, 340 F.3d 1003, 1005 (9th Cir. 2003). As the Ninth Circuit held in *Pallares-*

2  *Galan*:

3          For a waiver to be valid, *the government* must establish by "clear and
        convincing evidence," *Gete v. INS*, 121 F.3d 1285, 1293 (9th Cir. 1997),

4          *that the waiver is "considered and intelligent." United States v. Lopez-*
        *Vasquez*, 1 F.3d 751, 753-754 (9th Cir. 1993)(en banc); *see also United*

5          *States v. Gonzalez-Mendoza*, 985 F.2d 1014, 1017 (9th Cir. 1993) (finding
        a due process violation where immigration judge failed to inquire whether

6          right to appeal was knowingly and voluntarily waived).

7  *Pallares-Galan*, 359 F.3d at 1097 (emphasis added.). In this case, the government cannot establish by clear

8  and convincing evidence that Mr. Villa-Anquiano's appellate waiver was "considered and intelligent,"

9  because Mr. Villa-Anquiano's waiver followed an invalid waiver of his right to counsel and was based on

10  inadequate and inaccurate advisals regarding his rights.

11        The short colloquy between the IJ and the group further demonstrates that any purported waiver was

12  not considered and intelligent. *See, e.g., Pallares-Galan*, 359 F.3d. at 1093, 1098 (no express or implied

13  waiver where IJ asked alien if he wished to appeal and alien stated that "[i]t would be better if I leave my

14  children, that's fine" (emphasis removed)); *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir.2000)

15  (finding due process violation in a section 1326 collateral appeal because IJ failed to tell the defendant about

16  his eligibility for waiver of deportation); *United States v. Arce-Lua*, 163 F.3d 559, 563 (9th Cir. 1998) (same);

17  *Zarate-Martinez*, 133 F.3d at 1198 (holding that IJ's conversation with petitioner where IJ asked, "do you

18  understand your rights?" and petitioner responded "yes," did not "qualify as an express or implied 'voluntary

19  or intelligent' waiver of the right to appeal, even though IJ had previously informed the group that they would

20  have the right to appeal); *United States v. Lopez-Vasquez*, 1 F.3d 751, 753 (9th Cir. 1993) (en banc) (alien's

21  waiver was not "considered and intelligent" even though the IJ thoroughly explained the right to appeal at a

22  group hearing because the IJ failed to solicit separate responses from each individual; fact that the petitioner

23  knew what an appeal was "was insufficient"; the IJ's actions may have conveyed the message that the

24  petitioners would not benefit from an appeal).

25        Just as in *Lopez-Vasquez*, the IJ here explained the right to appeal to the group without soliciting

26  separate confirmation that each individual understood the nature and purpose of the right. Indeed, unless Mr.

27  Villa-Anquiano affirmatively indicated he did not understand the right, he would be presumed to have

28  understood it. This process "impermissibly presumes acquiescence in the loss of the right to appeal and fails

1  to overcome the presumption against waiver." *Lopez-Vasquez*, 1 F.3d at 755 (*citing Barker v. Wingo*, 407

2  U.S. 514, 525 (1972)).

3       The questioning that ended Mr. Villa-Anquiano's hearing fails to save this flawed proceeding.  Again,

4  the IJ failed to determine whether Mr. Villa-Anquiano knowingly and intelligently waived his right to appeal.

5  In fact, the limited transcript suggests he did not understand the proceeding.  Mr. Villa-Anquiano's responses

6  regarding his citizenship (Transcript, page 10) and whether he accepted his right to appeal reflect a profound

7  lack of sophistication the IJ did little to correct.  (E.g., IJ: "do you accept your deportation...or wish to

8  appeal?" Mr. Villa-Anquiano: "Uh, deport.").  Under the circumstances, because the government cannot meet

9  its burden of establishing that the waiver of the right to appeal was "knowingly and intelligently made," Mr.

10  Villa-Anquiano is excused from section 1326(d)'s exhaustion requirement.

11      **3.**    **The IJ Failed to Advise Mr. Villa-Anquiano of His Eligibility for Relief from**

12              **Deportation**

13       Mr. Villa-Anquiano is also exempt from the exhaustion requirement because the IJ did not inform

14  him that he was eligible for relief from deportation, despite the fact that Mr. Villa-Anquiano was eligible for

15  such relief.  In fact, the IJ incorrectly told Mr. Villa-Anquiano he was not eligible for any relief.

16       An IJ's failure to advise the alien of his eligibility for relief from deportation makes a deportation

17  proceeding defective.  *Ubaldo-Figueroa*, 364 F.3d at 1048.  *See also Arce-Lua*, 163 F.3d at 563 ("[W]here

18  the record contains an inference that the petitioner is eligible for relief from deportation, the IJ must advise

19  the alien of this possibility and give him the opportunity to develop the issue."); *Lopez-Vasquez*, 1 F.3d at 754

20  (holding that IJ hearing deprived petitioner's right to due process even where the IJ explained the right to

21  appeal and provided petitioner with a form explaining his right to an appeal in Spanish because the

22  information was given to him in a group format); *Mendoza-Lopez*, 471 U.S. at 840 (failure of IJ to advise alien

23  of his right to appeal and his eligibility for a waiver of deportation violated his due process rights and

24  "amounted to a complete deprivation of judicial review of the determination); *Arrieta*, 224 F.3d at 1079

25  (finding due process violation because IJ failed to tell defendant about his eligibility for a waiver of

26  deportation); *Moran-Enriquez v. INS*, 884 F.2d 420, 423 (9th Cir. 1989) (where record, fairly reviewed by a

27  person intimately familiar with the immigration laws (the IJ) raises a reasonable possibility that the petitioner

28  may be eligible for relief, the IJ must advise the alien of this possibility, if the petitioner is not advised of this

1    possibility, the appellate waiver is invalid) (citing 8 C.F.R. § 242.17(a)).  It is well-settled that Mr. Villa-

2    Anquiano's failure to appeal the IJ's order of deportation and exhaust his administrative remedies cannot bar

3    collateral review of his deportation proceeding where the defects in the proceeding served to persuade Mr.

4    Villa-Anquiano that any appeal would be futile.

5         Here, the government alleged two grounds of deportability:  (1) that Mr. Villa-Anquiano had been

6    convicted of an aggravated felony; and (2) that Mr. Villa-Anquiano had been convicted of an offense

7    involving a firearm as defined in section 18 U.S.C. § 921(a).  As demonstrated below, the record of conviction

8    was insufficient to sustain either ground of deportability.  Furthermore, Mr. Villa-Anquiano was eligible for

9    relief from either charge.  The IJ's statement that Mr. Villa-Anquiano had no relief available was therefore

10   incorrect and excuses his failure to exhaust remedies.

11              **a.    Mr. Villa-Anquiano Was Not Deportable as an Aggravated Felon.**

12        Mr. Villa-Anquiano was not deportable as an aggravated felon because the record of conviction did

13   not establish that he had been convicted of a "crime of violence."  To determine whether a prior conviction

14   meets the definition of a "crime of violence" under 8 U.S.C. § 16, this Court employs the "categorical

15   approach."  *See Penuliar v. Mukasey*, 528 F.3d 603, 608 (9th Cir. 2008). Under this approach, courts "look

16   only to the fact of conviction and the statutory definition of the prior offense," not to the underlying facts.

17   *Taylor v. United States*, 495 U.S. 575, 602 (1990).  "If the state statute criminalizes conduct that is not a crime

18   of violence . . ., then [the] conviction is not a categorical match."  *United States v. Wenner*, 351 F.3d 969, 972

19   (9th Cir. 2003).  Rather, a prior conviction qualifies as a crime of violence "if and only if the 'full range of

20   conduct' covered by [the criminal statute] falls within the meaning of that term."  *United States v.*

21   *Baron-Medina*, 187 F.3d 1144, 1146 (9th Cir. 1999) (citation omitted); *accord Suarez-Perez v. Mukasey*, 512

22   F.3d 1222, 1225 (9th Cir. 2008);  *United States v. Vidal*, 504 F.3d 1072, 1076 (9th Cir. 2007) (en banc).  If

23   the state offense is broader than the definition of "crime of violence," then it is unsuitable for deportation use,

24   because there is no assurance it relates to conduct which Congress intended to punish through deportation.

25   *Accord Taylor*, 495 U.S. at 599-602.

26        If the offense fails the first-stage categorical test, courts may continue to a second stage–or modified

27   categorical approach–by examining judicially cognizable documents in the record of the conviction.  When

28   a conviction follows a plea, this review is "limited to examining the statutory definition, charging document,

1  written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which

2  [the defendant] assented." *Vidal*, 504 F.3d at 1086.  The Ninth Circuit has held that when a defendant has

3  pleaded pursuant to *People v. West*, and has failed to admit facts "as charged in the indictment," this second

4  stage analysis can **never** establish facts sufficient to satisfy the categorical analysis. *See id*. at 1087 ("In order

5  to identify a conviction as the generic offense through the modified categorical approach, when the record of

6  conviction comprises only the indictment and the judgment, the judgment must contain "the critical phrase

7  'as charged in the Information.'").

8       Under California law, voluntary manslaughter may be committed through purely reckless conduct.

9  *See People v. Lasko*, 999 P.2d 666 (Cal. 2000) (voluntary manslaughter under Cal. Penal Code § 192 does

10  not require the intentional application of force, but can be committed recklessly and with conscious disregard

11  for human life. )  However, both the U.S. Supreme Court in *Leocal v. Ashcroft*, 543 U.S. 1 (2004), and the

12  Ninth Circuit in *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121 (9th Cir. 2006) (en banc), held that "crime of

13  violence" for purposes of defining an aggravated felony requires that the predicate offense have as an essential

14  element the intentional use of force.  Voluntary manslaughter in violation of California P.C. 192(a) therefore

15  is categorically overbroad because it encompasses some conduct that would constitute a crime of violence and

16  some conduct that would not.  *Compare Lasko*, 999 P.2d at 668 (killer "who... unintentionally but unlawfully

17  kills in a sudden quarrel or heat of passion" guilty of voluntary manslaughter) *with Fernandez-Ruiz*, 466 F.3d

18  at 1123, 1131 (defendant who "recklessly but unintentionally causes physical injury to another" guilty of

19  Arizona crime of domestic violence, but not of committing a "crime of violence.").

20       Furthermore, Mr. Villa-Anquiano entered a plea pursuant to *People v. West* and did not admit the

21  allegations in the charging document.[4]  Accordingly, pursuant to the rule in *Vidal*, neither this Court nor the

22  IJ can look past the statute of conviction to the particular facts of Mr. Villa-Anquiano's prosecution.  The

23  records of conviction therefore are insufficient to establish his deportability as an aggravated felon based on

24  his conviction for a crime of violence.

25  / / /

26  / / /

27  _____

28       [4]In fact, it appears Mr. Villa-Anquiano entered this *West* plea following a jury trial that
    ended in a mistrial.

1          **b.     Mr. Villa-Anquiano Was Not Deportable Based on a Firearms Conviction**

2          Neither was Mr. Villa-Anquiano deportable pursuant to INA 241(a)(2)(C), 8 U.S.C. § 1231 (a)(2)(C)

3    based on a conviction for an offense involving a firearm. The Board of Immigration Appeals addressed this

4    exact question in *Matter of Rodriguez-Cortes*, 20 I. & N. Dec. 587 (1992). In that case, the respondent had

5    been convicted of five counts of attempted murder in the second degree. *Rodriguez-Cortes*, 20 I. & N. Dec.

6    at 588. Like Mr. Villa-Anquiano, the respondent's sentence under one count was enhanced pursuant to section

7    12022(a) of the California Penal Code because a co-defendant was armed with a firearm. *Id*. The BIA held

8    that this respondent had not been "convicted" of a firearm offense under California law within the meaning

9    of section 241(a)(2)(C) and therefore was not deportable as an alien "convicted" at any time after entry of a

10   firearm violation. *Id*. at 590-91. The BIA therefore remanded to permit the respondent to apply for relief from

11   the aggravated felony allegation pursuant to INA 212(c).

12         Mr. Villa-Anquiano's case is on all fours with *Rodriguez-Cortes*. Mr. Villa-Anquiano was convicted

13   of voluntary manslaughter--a crime, like attempted murder, that is not a firearms offense--and given a

14   sentencing enhancement pursuant to Cal. Pen. Code 12022(a) based on a theory of vicarious liability use of

15   a gun. Because, pursuant to *Rodriguez-Cortes*, the California sentencing enhancement does not qualify as a

16   firearm "conviction" within the meaning of INA § 241(a)(2)(C), he was not deportable under this charged

17   ground.

18         **c.     Even If He Were Deportable as an Aggravated Felon, Mr. Villa-Anquiano Was
                    Eligible for Relief Pursuant to INA § 212(c)**

19

20         At the time the Order to Show Cause was issued to Mr. Villa-Anquiano, INA § 212(c) read as

21   follows:

22         Aliens lawfully admitted for permanent residence who temporarily proceeded abroad
           voluntarily[5] and not under an order of deportation, and who are returning to a lawful
23         unrelinquished domicile of seven consecutive years, may be admitted in the discretion of
           the Attorney General without regard to the provisions of subsection (a) of this section
24         (other than paragraphs (3) [participants in Nazi persecution or genocide] and (9)(c)
           [International child abduction]). Nothing contained in this subsection shall limit the

25

26         _____

27         [5]Notwithstanding this first sentence, both the Ninth Circuit and the Board of Immigration
           Appeals have held that INA 212(c) relief is available to persons in both deportation and
           exclusion proceedings, regardless of whether they have left the country. *See Tapia-Acuna v.*
28         *Immigration and Naturalization Service*, 640 F.2d 223 (9th Cir., 1981); *Matter of Silva*, 16 I. &
           N. Dec. 26, 29-30 (BIA Sept. 10, 1976).

authority of the Attorney General to exercise the discretion vested him under section 1181(b) of this title. The first sentence of this subsection shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years.

INA § 212(c), 8 USC 1181(c).  In *INS v. St. Cyr*, 533 U.S. 289, 321-22 (2001), the Supreme Court held that INA 212(c) relief remained available for those aliens, like Mr. Villa-Anquiano, who pleaded guilty prior to the enactment of the Antiterrorism and Effective Death Penalty Act of 1996.[6]

### I.    Seven Years Unrelinquished Domicile

At the time of his March 1997 deportation proceeding, Mr. Villa-Anquiano had been a lawful permanent resident of the United States since 1989. That is a period of more than seven years.

### ii.    Mr. Villa-Anquiano Had Not Served a Term of Imprisonment of Five Years for an Aggravated Felony Conviction

Mr. Villa-Anquiano was convicted in September 1993 for an offense that allegedly occurred in February 1993 and appeared before the Immigration Judge in January 1997.  This is a period of less than four years.  Accordingly, there is no question that, at the time of his deportation hearing, Mr. Villa-Anquiano had *not* been convicted of one or more aggravated felonies for which he "served . . . a term of imprisonment of at least five years."  See 8 U.S.C. § 1182(c).

### d.    Mr. Villa-Anquiano Was Eligible for Relief Under INA 212(h)

Mr. Villa-Anquiano also was eligible to waive the voluntary manslaughter conviction pursuant to INA 212(h), 8 U.S.C. § 1182(h)(1)(B).  That section permits an application for adjustment of status to waive any crime involving moral turpitude upon a showing that his deportation would result in "extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such alien."  *Id.* Importantly, while Mr. Villa-Anquiano disputes that he has been convicted of an aggravated felony, this section permits a respondent who adjusted status to lawful permanent resident following entry to waive crimes

---

[6]Relief pursuant to INA 212(c) is not available for some persons with firearm convictions. *See Komarenko v. I.N.S.*, 35 F.3d 432 (9th Cir. 1994).  *But compare* 18 U.S.C. § 921(a)(3) (containing exception for antique firearms) *with* Cal. Penal Code § 12021(A)(1) (containing no such exception).   Mr. Villa-Anquiano, however, does not have a firearms conviction.  *See Matter of Rodriguez-Cortes,* 20 I. & N. Dec. 587 (1992) (holding that application of sentencing enhancement for firearm under Cal. Pen. Code § 12022(a) not a "conviction"and remanding so that respondent with murder conviction could apply for relief under INA § 212(c).)

1  that are aggravated felonies as part of an application for (re)admission.  *See Martinez v. Mukasey*, 519 F.3d

2  532, 546 (5th Cir., 2008) ("For aliens who adjust post-entry to LPR status, § 212(h)'s plain language

3  demonstrates unambiguously Congress' intent not to bar them from seeking a waiver of inadmissibility.") *But*

4  *see In re Rosas-Ramirez*, 22 I. & N. Dec. 616 (BIA 1999) (An LPR cannot waive an aggravated felony

5  pursuant to INA 212(h)).  There is no firearms ground of inadmissibility.

6        Here, the IJ should have advised Mr. Villa-Anquiano of the possibility of INA 212(h) relief.  An

7  Immigration Judge has a duty to advise the respondent of any "apparent" relief. *See* 8 C.F.R. § 1240.11(a)(2)

8  (2006) ("The immigration judge shall inform the alien of his or her apparent eligibility to apply for any of the

9  benefits enumerated in this chapter and shall afford the alien an opportunity to make application during the

10  hearing.")  Here, the IJ knew, at a minimum, that Mr. Villa-Anquiano had qualifying relatives in his parents

11  and four-year-old U.S. citizen child.  As such, he facially qualified for relief.  *Cf. United States v.*

12  *Flores-Rodriguez*, 236 Fed.Appx. 338 (9th Cir. 2007) (unpublished) (Remanding due to IJ's erroneous advice

13  that respondent was ineligible for INA § 212(h) relief, even though relief would not be available until mother

14  naturalized.).

15        **e.    Mr. Villa-Anquiano Was Eligible for Combined INA §§ 212(c) and 212(h) Relief**

16        Lastly, even if the Court were to conclude (1) that Mr. Villa-Anquiano had been convicted of an

17  aggravated felony and (2) was deportable for a firearm "conviction" and (3) was ineligible to waive the

18  aggravated felony under 212(h), he would be eligible for combined relief.  That is: because a firearms offense

19  is not a ground of inadmissibility under INA § 212,  8 U.S.C. § 2112,  Mr. Villa-Anquiano could waive the

20  aggravated felony ground of deportability pursuant to INA § 212(c) and could then re-adjust status to lawful

21  permanent resident, with a 212(h) waiver of any crime of moral turpitude, pursuant to his relationship with

22  his fiancee or parent.  *See Matter of Gabryelsky*, Int. Dec. 3213 (BIA 1993); *Matter of Azurin*, 23 I. & N. Dec.

23  695 (BIA 2005)

24        **f.    Summation**

25        The Immigration Judge erred by informing Mr. Villa-Anquiano he was ineligible for relief because,

26  in fact, he was not deportable as charged.  Moreover, even if deportable under one of the grounds of

27  inadmissibility, he was eligible for relief pursuant to INA §§ 212(c) and 212(h), or a combination of the two.

28  The IJ's failure to advise him of these possibilities excuses his failure to exhaust remedies.

**B.    Mr. Villa-Anquiano Was Deprived of Judicial Review**

To sustain a collateral attack on his removal order, Mr. Villa-Anquiano must also demonstrate that the deportation proceedings improperly deprived him of judicial review. 8 U.S.C. § 1326(d)(2). As explained above, Mr. Villa-Anquiano was deprived of the opportunity for judicial review, because he did not make a considered and intelligent waiver of his rights to counsel or appeal. Likewise, Mr. Villa-Anquiano was deprived of judicial review because of the IJ's failure to inform him of his eligibility for relief from deportation.

**C.    Mr. Villa-Anquiano's Proceedings Were "Fundamentally Unfair"**

As noted above, Mr. Villa-Anquiano also must show that the proceedings against him were fundamentally unfair. *See* 8 U.S.C. § 1326(d)(3). "An underlying removal order is 'fundamentally unfair' if: '1) a defendant's due process rights were violated by defects in his underlying deportation proceeding, and 2) he suffered prejudice as a result of the defects.'" *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004).

**1.    Mr. Villa-Anquiano's Due Process Rights Were Violated**

Finally, Mr. Villa-Anquiano's deportation proceeding was constitutionally deficient in at least three ways: (1) the IJ failed to elicit a knowing and intelligent waiver of the right to counsel; (2) the IJ failed to elicit a knowing and intelligent waiver of the right to appeal, and (3) the IJ incorrectly advised Mr. Villa-Anquiano that he was ineligible for relief.

Of these, the deprivation of the right to counsel is the easiest, because the Ninth Circuit has held specifically that the mass silent waiver procedure employed here violated then-existing 8 C.F.R. § 242.16(a). *See Ahumada-Aguilar*, 295 F.3d at 947 ("Acceptance of an implicit waiver of the right to counsel is *unequivocally inconsistent* with the duty of an IJ to require the respondent to 'state then and there whether he requires representation.'") (emphasis added). *Ahumada-Aguilar* also concluded that failure to comply with this statute constitutes a due process violation compelling dismissal of the indictment. *Id*. at 945.

Furthermore, though a violation of the regulation alone would be sufficient to satisfy Mr. Villa-Anquiano's burden to show a due process violation, subsequent cases have made clear that the due process violation does not depend on the existence of the regulation. Rather, a mass silent waiver of the right to counsel *always* violates due process. *See Ram*, 529 F.3d at 1242 ("In order for a waiver to be valid, an IJ must

15

1  generally: (1) inquire specifically as to whether petitioner wishes to continue without a lawyer; and (2) receive

2  a knowing and voluntary affirmative response."); *Biwot v. Gonzales*, 403 F.3d 1094 (9th Cir. 2005) ("at a

3  minimum, [the IJ] must inquire whether the petitioner wishes counsel, determine a reasonable period for

4  obtaining counsel, and assess whether any waiver of counsel is knowing and voluntary.").

5        **2.**      **Mr. Villa-Anquiano Satisfies the Prejudice Prong**

6        **I.**      **Mr. Villa-Anquiano need not show prejudice.**

7        Because the Ninth Circuit has ***never*** failed to find prejudice in a case where the respondent was

8  denied the right to counsel, the Ninth Circuit has not yet decided "whether the violation of the statutory or

9  regulatory right to counsel requires a showing of prejudice." *Ram*, 529 F.3d at n1.  Mr. Villa-Anquiano

10  submits it does not.

11        It is well established that an immigration respondent is entitled to a presumption of prejudice when

12  his retained counsel is so ineffective as to deprive him of due process, such as by failing to file a timely

13  appeal.  *See Dearinger v. Reno*, 232 F.3d 1042, 1045 (9th Cir. 2000).  The Ninth Circuit has concluded this

14  presumption is justified because "the adversarial process itself has been rendered presumptively unreliable"

15  by the retained attorney's error. *Id.* (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000)).

16        Because the adversarial process is rendered just as unreliable when an IJ holds a removal hearing

17  without first obtaining a knowing and intelligent waiver of the right to counsel, the presumption of prejudice

18  should also apply here.  It would be illogical to presume prejudice from errors of counsel but not from the

19  deprivation of counsel.  *See Ram*, 529 F.3d at 1243 (describing the failure of the IJ to obtain a knowing and

20  intelligent waiver as a denial of the right to counsel.).  The government, therefore, bears the burden of proving

21  that the presence of counsel could not have made any difference in the proceedings.

22        Furthermore, as demonstrated above, Mr. Villa-Anquiano was not deportable as charged.  When a

23  respondent is not deportable, no additional showing of prejudice is required. *See United States v. Camacho-*

24  *Lopez*, 450 F.3d 928, 930 (9th Cir. 2006) ("Camacho's Notice to Appear charged him as removable only for

25  having committed an aggravated felony [but] Camacho's prior conviction did not fit that definition. Thus,

26  Camacho was removed when he should not have been and clearly suffered prejudice.")

27  / / /

28  / / /

1            **ii.    Even if Mr. Villa-Anquiano need show some prejudice, he need only show "potential" grounds for relief.**

2

3        The Ninth Circuit has never failed to find prejudice when an immigration respondent has been denied

4    the right to counsel.  This is because the Ninth Circuit has applied an uniquely low threshold for a showing

5    of prejudice in this context.  Specifically, while a respondent alleging a due process violation usually must

6    show "plausible" grounds for relief, the Ninth Circuit looks only for "potential" relief when a respondent has

7    been denied counsel.  *Compare Arrieta* (Respondent not informed about 212(h) relief "does not have to show

8    that he actually would have been granted relief. Instead, he must only show that he had a 'plausible' ground

9    for relief from deportation") *with Ram*, 529 F. 3d 1243(prejudice established if "the denial of right to counsel

10    *potentially* affected the outcome of the proceedings."); *Biwot v. Gonzalez*, 403 F.3d 1094, 1100 (9th Cir.

11    2005)(finding respondent "easily clears this [prejudice] hurdle" simply because "with an attorney, he would

12    not have been forced to proceed pro se, to present a case with no evidence, to answer the IJ's inquiries without

13    any idea of their legal significance, or to purport unwittingly to waive his appeal."); *Ahumada-Aguilar*, 295

14    F.3d at 950-951 (Holding prejudice is established if a "competent attorney" could have made any difference

15    and finding prejudice because attorney would have (1) pursued now foreclosed constitutional challenges; (2)

16    "urged [respondent] to press an appeal in order to accrue the final ten months necessary for him to qualify for

17    a discretionary waiver of deportation;" (3) "advised respondent of the significance of a deportation order;" and

18    (4) "prevented [respondent] from making an unknowing and involuntary waiver of his right to appeal based

19    on misinformation.").

20        Here, there can be no question that the presence of counsel could have affected the outcome of Mr.

21    Villa-Anquiano's proceedings.  A "competent attorney" would have contested deportability.  *See Ram*, 529

22    F.3d 1242  (finding prejudice because "an attorney would have helped Ram understand his criminal record

23    as well as his legal rights and evidentiary burden, so that he would not have admitted to allegations and

24    charges that were spurious and that the DHS could not substantiate with proper documentation.").  The

25    attorney also would have known that the BIA had held in *Matter of Rodriguez-Cortes* that people like Mr.

26    Villa-Anquiano were not removable for firearms offenses and did not have "convictions" rendering them

27    ineligible for relief under INA 212(c).  Lastly, an attorney would have pursued relief under INA §§ 212(c) or

28    212(h).

1            **iii.    Mr. Villa-Anquiano was potentially or plausibly eligible for relief**

2            When considering an alien's eligibility for relief under INA § 212(c), the IJ will balance the

3    defendant's equities against the adverse factors presented by the defendant's conviction.  *See*

4    *Ubaldo-Figueroa*, 364 F.3d 1042 (9th Cir. 2004).  The statute permits the IJ to consider the hardship

5    deportation will cause the respondent himself.  *See* 8 U.S.C. § 1182(c).

6            An applicant for relief pursuant to INA § 212(h) bears a heavier burden because the IJ does not

7    consider potential hardship to the respondent.  Instead, the respondent must show his deportation would result

8    in "extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such

9    alien." "The existence of family ties in the United States is the most important factor in determining hardship."

10   *Arietta*, 224 F.3d at 1082.  *See also Kahn v. INS*, 36 F.3d 1412, 1413 (9th Cir.1994)(the existence of United

11   States citizen children, is a "weighty factor in support of the favorable exercise of discretion under § 212(c)."

12   Although "economic hardship caused by the deportation of a family's primary bread-winner, combined with

13   the difficulties of relocating, do not, standing alone, constitute the extreme hardship necessary to justify relief

14   . . . ," *id.*, a defendant meets his burden of showing "plausible" relief through "a clear, detailed demonstration

15   that the defendant provided 'non-economic familial support' or 'something more' than financial support."

16   *United States v. Becerril-Lopez*, 528 F.3d 1133, 1137 (9th Cir.  2008).

17           Mr. Villa-Anquiano plainly made out a compelling case for relief under INA § 212(c).  He was only

18   22 years old and had lived in the United States nearly since birth.  He spoke English.  He had two United

19   States citizen parents, a four-year-old United States citizen child, and a United States citizen fiancee.  He had

20   only one conviction--the facts of which were contested and had led to a  mistrial--which he sustained at age

21   18 and for which he served only 3 ½ years.  He had no history of misconduct in custody.  These circumstances

22   establish *prima facie* eligibility for relief.  *Compare e.g. Nguyen v. I.N.S.*, 127 F.3d 1106 (9th Cir.,

23   1997)(unpublished) (IJ granted 212(c) relief to alien with ***multiple*** convictions, including for voluntary

24   manslaughter, because alien had "had demonstrated outstanding family ties, a long duration of residence, a

25   favorable parole report, and remorseful behavior.").

26           Furthermore, it is plausible Mr. Villa-Anquiano would have been granted relief under § 212(h).  He

27   had extremely strong family ties to the United States.  Exhibit 9, Photos of Mr. Villa-Anquiano with family.

28   His parents and wife have submitted declarations and will be available to testify at the hearing of this motion

1   regarding the hardship his prolonged absence would have caused.  His parents, in particular, suffer serious

2   health problems, and describes Mr. Villa-Anquiano's help as "life saving."  Exhibit 8.  His wife describes his

3   many contributions to the lives of their children.  These contributions clearly rise to "something more" than

4   mere economic support.  *Compare Arrieta*, 224 F.3d  at 1082 (reversing District Court because record

5   contained evidence defendant contributed "something more" than economic support by caring for his younger

6   brother, supporting his ill mother, and providing emotional support.).

7   **a.    Combined Relief**

8   For the same reasons, Mr. Villa-Anquiano was eligible for combined 212(c) and 212(h) relief.

9   **IV.**

10  **CONCLUSION**

11  Mr. Villa-Anquiano asks the Court to grant his motions and order the indictment against him

12  dismissed.

13  Respectfully submitted,

14

15  DATED:        July 30, 2008                      /s/ Gregory T. Murphy

16                                                   **GREGORY T. MURPHY**
                                                     Federal Defenders of San Diego, Inc.

17                                                   Attorneys for Alejandro Israel Villa-Anquiano

18

19

20

21

22

23

24

25

26

27

28

1 | **GREGORY T. MURPHY**
California State Bar No. 245505
2 | **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
3 | San Diego, CA 92101-5008
(619) 234-8467/Fax: (619) 687-2666
4 | E-Mail: gregory_murphy@fd.org

5 | Attorneys for Alejandro Israel Villa-Anquiano

6

7

8 | UNITED STATES DISTRICT COURT

9 | SOUTHERN DISTRICT OF CALIFORNIA

10 | **(HONORABLE WILLIAM Q. HAYES)**

11 | UNITED STATES OF AMERICA,           )    Case No. 08CR1550-WQH
                                        )
12 |                    Plaintiff,       )
                                        )
13 | v.                                  )    **CERTIFICATE OF SERVICE**
                                        )
14 | ALEJANDRO ISRAEL VILLA-ANQUIANO,    )
                                        )
15 |                    Defendant.       )
   _____ )

16

17 |          Counsel for Defendant certifies that the foregoing pleading is true and accurate to the best of his

18 | information and belief, and that a copy of the foregoing document has been served this day upon:

19 |                              Jeffrey David Moore
         Jeffrey.Moore@usdoj.gov,debra.huntley@usdoj.gov,efile.dkt.gc1@usdoj.gov

20

21 |                                        Respectfully submitted,

22

23 | DATED:        July 30, 2008              /s/ Gregory T. Murphy
                                             **GREGORY T. MURPHY**
24 |                                          Federal Defenders of San Diego, Inc.
                                             Attorneys for Alejandro Israel Villa-Anquiano

25

26

27

28