1  KAREN P. HEWITT
   United States Attorney
2  JEFFREY D. MOORE
   Assistant U.S. Attorney
3  California State Bar No. 240595
   Federal Office Building
4  880 Front Street, Room 6293
   San Diego, CA 92101-8893
5  Telephone: (619) 557-7171
   Email: Jeffrey.Moore@usdoj.gov
6
   Attorneys for Plaintiff
7  UNITED STATES OF AMERICA

8                        UNITED STATES DISTRICT COURT
                        SOUTHERN DISTRICT OF CALIFORNIA
9

10 UNITED STATES OF AMERICA,    )    CRIMINAL CASE NO. 08CR1550 WQH
                                )
11            Plaintiff,         )    Honorable William Q. Hayes
                                )    Courtroom 4
12                              )    Date: August 18, 2008
                                )    Time: 2:00 p.m.
13           v.                 )
                                )    UNITED STATES' RESPONSE TO
14 ALEJANDRO VILLA-ANQUIANO,)        DEFENDANT'S MOTION:
                                )
15            Defendant.         )    (1)     DISMISS THE INDICTMENT DUE TO AN
                                )            INVALID DEPORTATION
16                              )
                                )    TOGETHER WITH STATEMENT OF FACTS,
17                              )    MEMORANDUM OF POINTS AND AUTHORITIES.
                                )
18 _____)

19
          COMES NOW the plaintiff, United States of America, by and through its counsel, Karen P.
20
   Hewitt, United States Attorney, and Jeffrey D. Moore, Assistant United States Attorney, and  hereby
21
    files its Response to defendant's above-referenced motion.  This response is based upon the files and
22
   records of this case.
23
   //
24
   //
25
   //
26
   //
27
   //
28

1

**I**

2

**STATEMENT OF THE CASE**

3      On May 14, 2008, a grand jury returned a one-count indictment charging Alejandro Isreal Villa-

4  Anquiano ("defendant")  with being a deported alien found in the United States, in violation of Title 8

5  U.S.C. § 1326.  On May 20, 2008, defendant was arraigned on the Indictment and entered a plea of not

6  guilty.

7

**II**

8

**STATEMENT OF FACTS**

9      On or about May 3, 2008, Border Patrol Agent Shane Blea was on duty in the Chula Vista

10  area.[1/]  Around 11:15 pm, he was contacted by dispatch that the National City Police Department

11  was holding a person for evaluation.  This person turned out to be defendant.  Agent Blea responded

12  to the National City Police Department and spoke with Officer Segal.  Officer Segal was holding

13  defendant after he pulled him over for driving without headlights on.

14      When Agent Blea arrived at the National City Police Department he identified himself to

15  defendant and questioned him about his citizenship.  Defendant produced an alien resident card but

16  said that he had been previously deported from the United States and that he was in the country

17  illegally.  Agent Blea conducted a records check of defendant which revealed his prior immigration

18  and criminal history.  At around 12:05 am, Agent Blea placed defendant under arrest and transported

19  him to the Chula Vista Border Patrol Station for processing.

20      At the station, another records check was conducted which revealed defendant's identity and

21  identification numbers.  Defendant was then Mirandized by Agent Blea.  Defendant waived his

22  rights and admitted that he was a Mexican citizen, that he had been previously deported from the

23  United States, and that he had not applied for permission to legally re-enter.

24  //

25  //

26  //

27  //

28

[1/]      Statement of Facts taken from the investigative reports relating to the instant case.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III

### POINTS AND AUTHORITIES

### <u>DEFENDANT'S DEPORTATION IS VALID</u>

Defendant has argued that his 1997 deportation was invalid and the indictment should be dismissed on two grounds.   First, defendant alleges that the Immigration Judge ("IJ") failed to elicit knowing and voluntary waivers from him.  Second, defendant alleges that the IJ failed to inform him that he was eligible for relief. [Def. Mot. p. 1].  However, defendant's arguments lack merit and should be denied.

**A.      Legal Principles Governing Collateral Attacks On Deportation Orders**

"Because the underlying removal order serves as a predicate element of an illegal entry offense under  § 1326, a defendant charged with that offense may collaterally attack the removal order under the due process clause." United States v. Pallares-Galan, 359 F.3d 1088, 1095 (9th Cir. 2004); *see also* United States v. Mendoza-Lopez, 481 U.S. 828, 837-38 (1987).  An alien must demonstrate three things before he or she can collaterally attack a prior removal: "(1) exhaustion of available administrative remedies to seek relief from the deportation order; (2) improper deprivation of an opportunity for judicial review; and (3) fundamental unfairness of the underlying removal order." United States v. Camacho-Lopez, 450 F.3d 928, 930 (9th Cir 2006); *see also* 8 U.S.C. §  1326(d).  A removal order is "fundamentally unfair" if (1) due process was violated by defects in the alien's removal hearing, and (2) the alien suffered prejudice as a result of the defects. United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1048 (9th Cir 2004); *see also* Pallares-Galan, 359 F.3d at 1095.  Prejudice can only be demonstrated if defendant shows that he had plausible grounds for relief from deportation. United States v. Arce-Hernandez, 163 F.3d 559, 564 (9th Cir. 1998).

**B.      Defendant Failed To Exhaust All Administrative Remedies**

1.      Defendant's Waiver of His Right To Appeal Was Knowing And Voluntary

Defendant has argued that his waiver of his right to appeal was not knowing and voluntary because the IJ explained the right to appeal to the group as a whole and that the IJ's final question to defendant failed to save the "flawed" proceeding. [Def. Mot. p. 8-9 ].

1    In United States v. Estrada-Torres, 179 F.3d 776 (9th Cir. 1999) (overruled on other grounds

2 in United States v. Rivera-Sanchez, 247 F.3d 905, 909 (9th Cir. 2001) defendant tried to collaterally

3 attack his deportation during his prosecution for illegal entry.  In Estrada-Torres, it was undisputed

4 that defendant failed to appeal his deportation order, therefore failing to exhaust his administrative

5 remedies.  Id.  However, like the defendant in the instant case, Estrada-Torres claimed that he was

6 exempt from the exhaustion requirement because his due process rights were violated.  Id.  In

7 affirming the ruling of the district court, the Court pointed out that Estrada-Torres' case was

8 distinguishable from United States v. Zarate-Martinez, 133 F.3d 1194 (9th Cir. 1998) and United

9 States v. Lopez-Vasquez, 1 F.3d 751 (9th Cir. 1993).  Id. at 781.  The Court stated that even though

10 the IJ addressed the deportees as a group when he discussed the right to appeal, the IJ also asked

11 Estrada-Torres individually, "Do you accept the decision or wish to appeal?"  Id.  Based on the fact

12 the IJ explained the right to appeal to Estrada-Torres (with the other deportees) and individually

13 asked him specifically if he wanted to appeal his deportation order, his waiver of his right to appeal

14 was "considered and intelligent."  Id.  Because Estrada-Torres' waiver of appeal to the BIA was

15 valid, his due process rights were not violated.  Id.  *See also* United States v. Becerril-Lopez, 528

16 F.3d 1133, 1138 (9th Cir. 2008) (finding valid appellate waiver where immigration judge asked each

17 individual whether he would appeal or accept the decision as final); United States v. Chavez-Huerto,

18 972 F. 2d 1087, 1089 (9th Cir. 1992) (waiver held "knowing and considered" where waiver was

19 stated by each individual detainee after an explanation of right to appeal; Chavez's action knowing

20 and considered in the sense that he knew he had the right to appeal and specifically waived it).

21    The instant case is on point with Estrada-Torres; Becerril-Lopez, and Chavez-Huerto.  Here,

22 the IJ explained the right to appeal to the group as a whole, and like in Estrada-Torres, the IJ

23 individually addressed defendant regarding his right to appeal. [Def. Exh. 8].  In fact, the IJ in the

24 instant case asked defendant two individual questions regarding whether he wished to appeal: "Do

25 you accept or wish to appeal?  Do you accept your deportation to Mexico, or do you wish to

26 appeal?" [Def. Exh. 8].  In response, defendant stated, "Uh, deport." [Def. Exh. 8].  Thus, defendant

27 had the opportunity to ask questions or clarify his appellate right but he declined to do so.  As a

28 result, defendant's appellate waiver was considered and intelligent.  Thus, defendant has not

4                                              08CR1550 WQH

1    satisfied the first prong for a collateral attack: exhaustion of administrative remedies to seek relief

2    from the deportation order.  United States v. Muro-Inclan, 249 F.3d 1180, 1182 (9th Cir. 2001.) *See*

3    *also* Noriega-Lopez v. Ashcroft, 335 F.3d 874, 879-80 (9th Cir. 2003) (where alien failed to

4    challenge of sufficiency of proof of prior conviction on direct appeal, court would not consider it on

5    collateral attack); Rashtabadi v. INS, 23 F.3d 1562, 1567 (9th Cir. 1994) ("Failure to raise an issue

6    in an appeal to the BIA constitutes a failure to exhaust remedies with respect to that question and

7    deprives this court of jurisdiction to hear the matter.").  On this ground alone, defendant's collateral

8    attack on his deportation fails.

9    **C.     The Entry of Defendant's Deportation Order Was Not Fundamentally Unfair**

10           Even if defendant was exempt from the exhaustion requirement, the entry of his deportation

11   order was not fundamentally unfair.

12           1.     Defendant's Due Process Rights Were Not Violated

13           Defendant has argued that his due process rights were violated because the IJ failed to advise

14   him individually as to his right to counsel as the IJ employed a "mass silent waiver" procedure.

15   [Def. Mot. p. 6-7].  Defendant's has also asserted that the Government failed to prove that his

16   appellate waiver was "knowing and intelligent" because his waiver followed an invalid waiver of the

17   right to counsel and was based on inadequate advisals regarding his rights. [Def. Mot. p. 8].

18   However, defendant's due process rights were not violated.

19           One of the main concerns addressed in Lopez-Vasquez, 1 F.3d at 754, was that "mass silent

20   waiver" creates a risk that individual detainees will feel coerced by the silence of their fellows.

21   There were six deportees at defendant's 1997 deportation proceeding.  [Gov. Exh. 1].  While this

22   could be called a "mass group," the amount of deportees does not appear to be overwhelming.  But

23   most notably, three out of the six detainees, on three separate occasions, raised their hands in

24   response to three separate "mass" questions posed by the IJ.  [Gov. Exh. 1].  Thus, concern over the,

25   "coerced silence of their fellows," addressed by Lopez-Vasquez appears inapplicable.  Obviously,

26   50% of the people did not feel coerced by anyone else in the group.  [Gov. Exh. 1].

27           In essence, defendant has stated that if he were to have been individually addressed regarding

28   his right to counsel, he would have invoked that right.  However, that assertion rests on speculation.

In addition, defendant has gone on to state that if he had an attorney, that his "competent attorney"could have affected the outcome of defendant's proceedings and would have contested deportability. [Def. Mot. p. 17]. Once again, defendant is speculating. What casts serious doubt on defendant's assertion that he would have invoked his right to counsel is that when he was addressed individually regarding the right to appeal, he waived it. [Def. Exh. 8].

>    2.    Even If Defendant's Due Process Rights Were Violated He Cannot Establish Prejudice

Defendant has argued that he was prejudiced because he was entitled to relief under either section 212(c) and/or section 212(h) of the Immigration and Nationality Act. [Def. Mot. p. 12-14]. However, defendant's contentions lack merit and should be denied.

>    (a)    Defendant Was Not Entitled To Section 212(c) Relief As He Was Deportable As An Aggravated Felon

In 1997, defendant plead guilty and was convicted of Voluntary Manslaughter in violation of California Penal Code section 192(a) with a sentencing enhancement for vicarious use of a firearm pursuant to Penal Code section 12022(a)(1). [Def. Exh. 6]. Defendant has argued that he was not deportable as an aggravated felon because the record of his conviction did not establish that he had been convicted of a "crime of violence." [Def. Mot. p. 10]. Defendant further states that P.C. section 192(a) is not a Categorical crime of violence because it is overbroad. [Def. Mot. p. 11]. However, defendant's position is incorrect.

Under California Penal Code section 192, Voluntary Manslaughter is the "unlawful killing of another human being without malice." Under P.C. section 192(a), Voluntary is described as, "upon a sudden quarrel or heat of passion." The Government asserts that P.C. section 192(a) qualifies as an aggravated felony under the Categorical approach. *See* United States v. Bonilla-Montenegro, 331 F.3d 1047, 1050-1051 (9th Cir. 2003) (we conclude that, because manslaughter is specifically enumerated in Section II, it is a "crime of violence." In doing so, we reiterate that a "crime of violence" does not require specific intent). *See also* United States v. Trinidad-Aquino, 259 F.3d 1140, 1146 (9th Cir. 2001) ("crime of violence" does not require the intentional use of force). Based on the fact that defendant was deportable after he was convicted of an aggravated felony, he suffered no prejudice.

6                                                            08CR1550 WQH

1

### (b)   Defendant Has Failed To Demonstrate That He Suffered Prejudice Under The Heightened "Unusual Or Outstanding Equities" Standard

2

3     Even assuming there were defects in defendant's deportation hearing, and assuming he was

4  not deportable as an aggravated felon, defendant bears the burden of proving prejudice. United

5  States v. Arrieta, 224 F.3d 1076, 1079 (9th Cir. 2000) (defendant bears burden).  To show prejudice

6  from a refusal to advise of discretionary relief from removal, an alien must generally show he had a

7  "plausible" claim to that discretionary relief.  Id.  Thus, the remaining question is whether it was

8  plausible that he would have been granted relief under 212(c) had he applied for such relief during

9  his deportation proceeding in 1997.  The Government asserts that it was not plausible.

10     A "Section 212(c)" determination involves a balancing of "the adverse factors evidencing an

11  alien's desirability as a permanent resident with the social and humane considerations presented on

12  his behalf to determine whether the granting of Section 212(c) relief appears in the best interests of

13  this country.  In re Marin, 16 I. & N. Dec. 581, 584 (BIA 1978).  The factors that weigh in favor

14  212(c) relief include:

15     (1)  family ties within the United States; (2) residence of long duration in this
    country; (3) hardship to the alien or alien's family if relief is not granted; (4) service
16     in the United States armed forces; (5) a history of employment;  (6)  the existence of
    business or property ties;  (7) evidence of value and service to the community; (8)
17     proof of rehabilitation if a criminal record exists; (9) other evidence attesting to good
    character.

18

19  Pablo v. INS, 72 F.3d 110, 113 (9th Cir. 1995).

20     The factors that weigh against 212(c) relief include:

21     (1) the nature and underlying circumstances of the exclusion or deportation ground at
    issue; (2) additional violations of the immigration laws; (3) the existence, seriousness,
22     and recency of any criminal record; (4) other evidence of bad character or the
    undesirability of the applicant as a permanent resident.

23

24  Id.

25     However, aliens – like defendant – who have a serious criminal record, must also

26  demonstrate "unusual or outstanding equities" in order to receive Section 212(c) relief. *See* United

27  States v. Gonzalez-Valerio, 342 F.3d 1051, 1056-57 (9th Cir. 2003) ("Because Gonzalez  was

28  convicted of multiple crimes, including lewd acts on a child, spousal abuse, and resisting arrest, he

1    would be required to demonstrate outstanding equities"); Ayala-Chavez v. INS, 944 F.2d 638, 641

2    (9th Cir. 1991); Blackwood v. INS, 803 F.2d 1165, 1168 (11th Cir. 1986) (per curiam); Mantell v.

3    INS, 798 F.2d 124, 126 (5th Cir. 1986); Matter of Roberts, 20 I. & N. Dec. 294, 299 (BIA 1991);

4    Matter of Marin, 16 I & N Dec 581, 585 (BIA 1978).  The requirement that a defendant demonstrate

5    "unusual or outstanding equities" applies to cases involving aliens with serious criminal records and

6    is not exclusively limited to drug cases. *See also* Matter of Buscemi, 19 I. & N. Dec. 628, 633

7    (1988) ("[A]s the negative factors become more serious, it becomes incumbent upon the alien to

8    introduce additional offsetting favorable evidence, which in some cases may have to involve unusual

9    or outstanding equities. . . [S]uch a showing may be mandated because of a single serious crime[.]").

10    United States v. Corrales-Beltran, 192 F.3d 1311, 1318-19 (9th Cir. 1999); United States v.

11    Arce-Hernandez, 163 F.3d 559, 563 (9th Cir. 1999); United States v. Jimenez-Marmolejo, 104 F.3d

12    1083, 1086 (9th Cir. 1996).  Put differently, he "must show that 'a direct appeal could . . . have

13    yielded a different result.'"  Corrales-Beltran, 192 F.3d at 1318.

14         At *no point* in his moving papers does defendant acknowledge, or own up to, this heightened

15    standard.  That omission is significant.  Here, defendant must make a plausible showing of "unusual

16    or outstanding equities" in order to carry his burden of proving prejudice.

17                        1.       Family Ties Within The U.S.

18

19         At the time of defendant's deportation hearing in 1997, defendant had one child, a four year

20    old boy who was a U.S. citizen. [Gov. Exh. 3]; [Def. Exh. 4].  In addition, defendant's father

21    recently became a U.S. citizen and his mother was going to take the test.   [Def. Exh. 1; 8].

22    However, one of defendant's brothers was in prison for First Degree Murder as the co-defendant in

23    defendant's voluntary manslaughter case.  [Gov. Exh. 3].

24         The existence of substantial family ties in the United States may be "a weighty factor in the

25    support of the favorable exercise of discretion under § 212(c)."  Kahn v. INS, 36 F.3d 1412, 1414

26    (9th Cir. 1994); Ubaldo-Figueroa, 347 F.3d at 722 (defendant had been married nine years, had two

27    kids, and was deeply involved in his kids' education to the point of "frequently attend[ing]

28    parent-teacher conferences and school events"); Elramly v. INS, 73 F.3d 220, 224 (9th Cir. 1995)

1    (alien, who had resided in the United States for 15 years, had substantial family ties in the United

2    States including a wife, ex-wife, and three children).

3        While this is "a weighty factor," the existence of this factor fails to distinguish defendant in

4    any "unusual" way from many Section 212(c) applicants.  *See* <u>Ayala-Chavez v. INS</u>, 944 F.2d 638,

5    642 (9th Cir. 2001) (upholding finding that alien had not shown "outstanding" equities, even though

6    he had 18 years of residence, most of his family lived here, and he had a minor daughter whom he

7    supported); <u>Agustin v. INS</u>, 700 F.2d 564, 565 (9th Cir. 1983) (concluding that the alien's situation

8    was no different from that of any other alien who faces deportation after living in this country for

9    several years because his parents and five siblings resided in the country to which he would be

10   deported); <u>Zaluski v. INS</u>, 37 F.3d 72, 74 (2d Cir. 1994) (<u>per</u> <u>curiam</u>) (upholding denial of Section

11   212(c) relief for alien who lived in U.S. since age one and whose entire family lived here, given his

12   lengthy criminal record which began when he was a teenager).

13              2.        Residence of Long Duration in The U.S.

14

15       It appears that defendant had been in the U.S. illegally since 1975. [Def. Exh. 1].  Thus,

16   defendant did have a residence of long duration in the U.S.  However, defendant's residency is

     marred by his serious criminal conviction for voluntary manslaughter prior to his deportation.

17   Clearly, his residency can not be characterized as desirable.

18
              3.        Hardship To Alien's Family
19

20       The Ninth Circuit has held that a showing of "extreme hardship" requires "great actual or

21   prospective injury" or "extreme impact" on the citizen family member, beyond the "common results

22   of deportation."  <u>United States v. Arce-Hernandez</u>, 163 F.3d 559, 564 (9th Cir. 1998) (citing

23   <u>Shooshtary v. I.N.S.</u>, 39 F.3d 1049 (9th Cir. 1994); *See* <u>United States v. Muro-Inclan</u>, 249 F.3d

24   1180, 1184 (9th Cir. 2001).  However, in the instant case, defendant's removal would merely

25   constitute "the common results of the deportation of a convict."  163 F.3d at 559.

26       In defendant's moving papers, he claims that his deportation is a hardship on his family.

27   [Def. Mot p. 18-19].  However, such general allegations are not enough to establish Section 212(c)

28   relief.  *See* <u>Banks v. INS</u>, 594 F.2d 760, 762 (9th Cir. 1979) (an alien cannot generally "gain a

                                               9                              08CR1550 WQH

1  favored status on the coattails of his (or her) child who happens to have been born in this country").

2  *See also* Muro-Inclan, 249 F.3d at 1185 (any claims of hardship to a spouse and child from

3  deportation are necessarily undercut where defendant spent substantial time incarcerated while his

4  family got by without him).

5       Here, defendant's case is not unique.  Defendant has failed to show the required "unusual or

6  outstanding equities" to be eligible for relief.  Before defendant went to prison in 1993, a Probation

7  and Sentencing Report ("PSR") was written.  At this time, defendant indicated that his parents were

8  his source of support and that he was indigent.  [Gov. Exh. 3].  In addition, defendant indicated that

9  he gave his son's mother money for the child *when* he was working. (emphasis added).  [Gov. Exh.

10 3].  Defendant's deportation proceeding took place after he was released from prison in 1997.  It is

11 hard to imagine that given his spotty work history, that defendant was providing any source of

12 financial support to family members.  Defendant's mother and father claim that defendant provided

13 mechanical service to their cars and that he was a "skilled mechanic."  [Def. Exh. 1; 2].  However, it

14 is surprising that defendant would not have attempted to get a job in that field given his alleged

15 proficiency and ability.  Defendant's father also discusses how defendant provided economic and

16 non-economic support over the last decade while defendant's wife submitted a declaration regarding

17 what defendant has done to help her and their family since he was released from prison.  [Def. Exh.

18 1; 3].  However, it is irrelevant what defendant did over the past decade.  What matters is what he

19 provided at the time of his deportation hearing in 1997 and there is no substantial evidence to

20 indicate that he provided any economic support.  [Gov. Exh. 3].

21       Furthermore, at the time of his deportation, he had only one child.  [Def. Exh. 4]; [Gov. Exh.

22 3].  The declaration of defendant's wife is telling.  Defendant's wife states, "Most importantly, he

23 takes care of our four children."  [Def. Exh. 3].  However, defendant did not have any of these

24 children at the time of his deportation proceeding in 1997.  Thus, it is irrelevant that defendant has

25 had other children since he was deported in 1997.  In the end, defendant has presented no evidence

26 that at the time of his deportation proceeding in 1997, that the hardship to his family was unique.

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4.    Service In The U.S. Armed Forces And Business or Property Ties

Defendant has not claimed any prior military service and has not established that he owned significant property or had business ties to the community prior to his deportation. *See* Matter of Roberts, 20 I. & N. Dec. at 298 (noting relevance of these factors).

5.    Employment History

A strong work history is a factor that weighs in favor of Section 212(c) relief. See Pablo, 72 F.3d at 113 (listing "history of employment" as a positive factor);. Ubaldo-Figueroa,347 F.3d at 722 (noting that at the time of his arrest for reentry, the alien had worked at the same company "continuously for . . . eleven years"); Georgiu v. INS, 90 F.3d 374, 377 (9th Cir. 1996) (alien worked after he graduated from high school, throughout prison, was hired full time by Alpha Technology at the time of his deportation hearing; and corroborated his work history with several work reports that describe him as an "excellent worker" who was "ambitious" and "took pride in his work"); United States v. Perez, 330 F.3d 97, 102 (2d Cir. 2003) (alien could have made a strong showing in support of Section 212(c) relief including "a steady history of employment"). An irregular work history, however, is not a strong equity for purposes of section 212(c)relief. See Matter of Roberts, 20 I. & N. Dec. at 302 (noting that "irregularity" of employment weighs against eligibility for Section 212(c) relief). Prior to his deportation in 1997, defendant had a spotty work history. [Gov. Exh. 3]. Beyond that, defendant has presented no evidence of his work history from any time in his life. Clearly, defendant has failed to show that he was a productive, tax-paying member of society. Given this lack of information, the Court should draw an adverse inference and hold that defendant's work history weighs against Section 212(c) relief.

6.    Value and Service to The Community

Evidence of the alien's value and service to the community may be a factor in favor of granting Section 212(c) relief. *See* Georgiu v. INS, 90 F.3d 374, 377 (9th Cir. 1996) (alien established that he had performed significant community service including shopping for groceries, shoveling snow, and making repairs for senior citizens, serving as a designated driver for a local tavern, and performing maintenance services at the local senior citizen's center).

08CR1550 WQH

1
2
3
4
5

At the time of his deportation proceeding in 1997, defendant was a recently released 22 year old former gang member having just finished serving a 3 ½ year sentence for the killing of another human being. [Gov. Exh. 3]; [Def. Exh. 6]. Defendant failed to allege that he performed any community service prior to his deportation. Beyond that, there is no indication that defendant added any positive value to the community.

6

### 7.    Proof of Rehabilitation

7
8
9
10
11
12
13
14
15
16
17
18

"[A]n application for relief under section 212(c) of the act with a criminal record will ordinarily be required to make a showing of rehabilitation before relief will be considered as a matter of discretion." Matter of Buscemi, 19 I. & N. Dec. at 635; Matter of Roberts, 20 I. & N. Dec. at 299 (same). Evidence of rehabilitation may include the lack of commission of any additional crimes, enrollment in and attendance at rehabilitation programs, statements of remorse and letters of good character. Georgiu, 90 F.3d at 377-78 (the alien established evidence of rehabilitation by proving that he committed no additional crimes, expressed deep remorse for his actions and a sincere desire to atone for them, and submitted letters from his parole officer and local senior citizen's center director attesting to his community service and good character); Rashtabadi v. INS, 23 F.3d 1562, 1571 (9th Cir. 1994) (evidence that the alien took GED and vocational classes in prison, received positive evaluations by instructors, and did not engage in any further criminal conduct was "at least probative of rehabilitation").

19
20
21
22
23

Defendant has failed to present any evidence that he had been rehabilitated at the time of his deportation. For example, defendant did not establish that he enrolled in or attended any rehabilitation programs and he did not provide any letters of good character from his probation officers, parole officers, or guidance counselors. Beyond that

### 8.    Evidence Attesting to Good Character

24
25
26

Defendant has not presented evidence attesting to good character at the time of his deportation proceeding and the Government is unaware of any such evidence.

27
//

28
//

**A.    Additional Factors Weighing Against Section 212(c) Relief**

1.    Nature and Underlying Circumstances of the Deportation

Defendant was considered deportable for the following reasons: (1) defendant was convicted of an Aggravated Felony in 1993 for Voluntary Manslaughter; and (2) defendant had been convicted for a firearm offense. The nature of the circumstances of deportation are of an extremely serious nature.

2.    Additional Violations of The Immigration Laws

The Government is unaware of any additional violations of the immigration laws on the part of defendant.

3.    Existence, Seriousness, and Recency of a Criminal Record

An alien's criminal history is one of the "most significant" factors governing relief from deportation. See Matter of P— C— M— , 20 I. & N. Dec. 432, 435 (BIA 1991). As demonstrated by defendant's serious criminal history, this factor clearly would have weighed heavily against granting discretionary relief.

The Government finds it troubling that defendant has downplayed the seriousness of his criminal record. In making out his "compelling" case for relief under INA section 212(c), defendant states that he had only "one" conviction and that he "served only 3 ½ years." [Def. Mot. p. 18]. While those facts are true on their face, they fail to underscore the fact that defendant's "one" conviction resulted in the death of a 16 year old boy. [Gov. Exh. 3]; [Def. Exh. 6]. This killing, in which defendant pled guilty, is a lesser included offense of First Degree Murder and defendant was sentenced to seven years in prison. [Gov. Exh. 2; 3]; [Def. Exh. 6].

While defendant only suffered one adult conviction, he had two prior juvenile adjudications. First, defendant had an adjudication for possession of a firearm on school grounds in 1989. [Gov. Exh. 3]. Defendant claimed he had the gun because there was going to be a gang fight after school [Gov. Exh. 3]. Second, defendant had an adjudication for associating with gang members to which he was prohibited from doing. [Gov. Exh. 3].

08CR1550 WQH

<blockquote>

4.    <u>Evidence of Bad Character Or Undesirability of the Applicant as a Permanent Resident</u>
</blockquote>

At the time the PSR was written in defendant's voluntary manslaughter case in 1993, defendant admitted that he was a member of the "Old Town National City" gang between the ages of 15-18. [Gov. Exh. 3]. Defendant was also a documented gang member according to law enforcement records. [Gov. Exh. 3]. Defendant stated that he has not been actively involved with this gang in the past but admitted that his younger brother (who was the shooter in defendant's voluntary manslaughter case) was also a documented member of the same gang. [Gov. Exh. 3]. It goes without saying that being a documented gang member with a serious criminal record for the killing of another human being, make defendant an undesirable permanent resident of the United States. Again, defendant has been unable to present any evidence to indicate that he added any positive value to the community.

**(B)    Section 212(c) Summary**

Here, defendant has only presented declarations of family members who claim that he was a source of support for them. Even if accepted as true, the facts offered do not establish "unusual or outstanding equities," nor do they establish a plausible claim for discretionary relief under the "unusual or outstanding" equities standard. The Government realizes that defendant does not have to prove that he *actually* would have received Section 212(c) relief. However, on this record, where it reasonably appears that defendant could not have possibly adduced any "unusual or outstanding equities" to counterbalance his criminal history and proclivity for recidivism, the IJ could not have "plausibly" granted him such relief under section 212(c). As such, defendant has not met his burden and his collateral attack on his deportation should be denied.

**(c) Defendant Is Not Entitled To Section 212(h) Relief As He Was An Aggravated Felon And Legal Permanent Resident**

Defendant has argued that he was prejudiced because he was entitled to relief under section 212(h) of the Immigration and Nationality Act, 8 U.SC. Section 1182(h)(1)(B). [Def. Mot. p. 13-14]. However, defendant's contention lacks merit and should be denied.

14    08CR1550 WQH

1    The Court in <u>United States v. Arrieta</u>, 224 F.3d 1076 (9th Cir. 2000), dealt with the issue of

2   discretionary relief regarding a section 212(h) waiver.  In addressing the issue, the Court stated that

3   a section section 212(h) waiver contains its own limitation with regard to aggravated felons by

4   prohibiting an alien convicted of an aggravated felony who has "previously been admitted to the

5   United States as an alien lawfully admitted for permanent residence" from receiving relief.  <u>Id</u>. at

6   1080.  At the time of his deportation hearing in the instant case, defendant had been convicted of an

7   aggravated felony and was a lawful permanent resident.  (Def. Exh. 5; 6).  As a result, defendant was

8   prohibited from receiving section 212(h) relief.  <u>Arrieta</u>, 224 F.3d at 1080.  Thus, defendant was not

9   prejudiced by the IJ's failure to inform him of section 212(h) relief.

10              **(d) Even If Defendant Was Eligible For Relief Under Section 212(h) He Would
                   Not Have Qualified**

11

12              8 U.S.C. § 1182 (corresponding to INA section 212) addresses circumstances where an alien

13  is inadmissible.  Under Rule 212(h), a waiver of excludability will be granted where:

14              (1) the alien is the spouse, parent or child of a citizen or lawful permanent
                resident; (2) the exclusion would result in extreme hardship to the citizen or
15              lawful resident relative; (3) the alien's admission would not be contrary to the
                national welfare, safety or security of the United States; and (4) the Attorney
16              General exercises her discretion in the alien's favor.

17  <u>Arce-Hernandez,</u> 163 F.3d at 563 (citing 8 U.S.C. § 1182(h)).

18              1.    <u>Defendant Was The Parent And Child Of A Citizen Or Lawful</u>
19                    <u>Permanent Resident</u>

20              Based on his representations at his deportation hearing in 1997 as well as the documents he

21  has submitted, it does appear that defendant had a four year old U.S. citizen child as well as a father

22  who had been recently granted citizenship. [Def. Exh. 8; Exh. 4].

23

24              2.    <u>Defendant Has Not Established that His Removal Would Have</u>
                      <u>Created Extreme Hardship To His Family</u>

25

26              Assuming the validity of defendant's representations in his motion, defendant still cannot

27  prevail on the issue of prejudice because he cannot meet the second element for Section 212(h) relief

28  as his deportation would not result in "extreme hardship" to his family.  As someone who was 22

1   years old at the time of his deportation, who served 3 ½ years in prison, was a member of a criminal

2   street gang, who had little to no work history, and who supported his child *when* he worked, it is

3   difficult to imagine how defendant's removal would have caused his family extreme hardship. [Gov.

4   Exh. 3].

5          Again, a showing of "extreme hardship" requires "great actual or prospective injury" or

6   "extreme impact" on the citizen family member, beyond the "common results of deportation." Arce-

7   Hernandez, 163 F.3d at 564 (citing Shooshtary v. I.N.S., 39 F.3d 1049 (9th Cir. 1994); see United

8   States v. Muro-Inclan, 249 F.3d 1180, 1184 (9th Cir. 2001).  In Arce-Hernandez, 163 F.3d 559, 564,

9   the court held that:

10             The allegation that the wife suffers from poor health and would have
               difficulty working in Mexico, if true, would constitute hardship to a wife and
11             her children, but we cannot say, as a matter of law, that these hardships would
               be extreme and beyond the common results of the deportation of a convict.
12             Indeed, Arce-Hernandez describes the typical case of hardship that follows
               deportation of an alien whose citizen wife and children were all acquired after
13             his illegal entry into the United States.

14
15         In Muro-Inclan, 249 F.3d at 1185, the Court also held that the hardships alleged by the

16   appellant represented the common results of deportation and did not represent the type of additional

17   evidence of extreme hardship beyond the normal deprivation of family support.  Specifically, the

18   Court noted that:

19             Here, the only evidence submitted to show hardship is a brief, generalized
               declaration from Appellant's wife, who states that she needs his 'help in
20             raising children and providing for them.  I cannot provide everything they
               need without their father's help.'  However, the record discloses that
21             Appellant has been incarcerated for 10 out of the last 13 years.

22   Id.  Finally, in Shooshtary, 39 F.3d at 1051, the Court found that no evidence was presented of

23   extreme hardship "other than generalities about having to move his family elsewhere, anticipated

24   difficulties in finding work, and anticipated loss of friends.  Such generalities are, of course, present

25   when one moves to a new location."  The Court specifically held that "generalities" set forth as

26   evidence instead of "preciseness of proof" do not "meet the burden required to show extreme

27   hardship." Id.

28

                                                      16                                08CR1550 WQH

1   Here, defendant has offered only statements of general hardship, but no compelling reasons

2   regarding why deportation would have caused extreme hardship.  Therefore, defendant's case does

3   not meet the requirements of 212(h) relief.

4                       3.    Defendant's Admission Would be Contrary to the National Welfare

5   Defendant could not establish that his admission would not be contrary to the welfare of the

6   United States.  His conviction, for voluntary manslaughter with an enhancement for vicarious use of

7   a firearm, along with being a member of a criminal street gang at the time of his conviction, indicate

8   that he was a danger to society.  Furthermore, his lack of work history, military service and

9   education, fail to provide evidence that having him remain in the U.S. would promote the National

10  Welfare.

11

12                      4.    The Attorney General Did not Exercise Discretion in Defendant's
                              Favor

13

14  At the time of defendant's deportation hearing, defendant was already a legal permanent

15  resident.  [Def. Exh. 5].  As a result, and as stated earlier, 212(h) would not apply.  Thus, the

16  Attorney General would not have exercised his discretion to allow defendant to remain in the

    country because defendant already had status.  [Def. Exh. 5].
17

18  For the reasons discussed earlier, defendant cannot establish that he had plausible grounds

19  for relief from his deportation order under section 212(h).  Here. Section 212(h) does not apply to

    defendant's case and even if it did, he fails to meet all of its requirements.
20

21  //

22  //

23  //

24  //

25

26  //

27  //

28  //

**VI**

**<u>CONCLUSION</u>**

For the foregoing reasons, the Government respectfully requests that defendant's motion to dismiss the indictment be denied.


DATED:        August 11, 2008                    Respectfully submitted,

                                                 KAREN P. HEWITT
                                                 United States Attorney


                                                 <u>/s/ Jeffrey D. Moore</u>
                                                 JEFFREY D. MOORE
                                                 Assistant U.S. Attorney

08CR1550 WQH

1

2

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

3

4  UNITED STATES OF AMERICA,            )   Criminal Case No. 08CR1550 WQH
                                        )
5                         Plaintiff,    )
                                        )
6                                       )   CERTIFICATE OF SERVICE
                                        )
7                 v.                    )
                                        )
8  ALEJANDRO VILLA-ANQUIANO,            )
                                        )
9                                       )
                                        )
10                        Defendant.    )
                                        )
11 _____

12 IT IS HEREBY CERTIFIED THAT:

13

14      I, Jeffrey D. Moore, am a citizen of the United States and am at least eighteen years of age.
   My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

15

16      I am not a party to the above-entitled action.  I have caused service of GOVERNMENT'S
   RESPONSE TO DEFENDANT'S MOTION on the following parties by electronically filing the
   foregoing with the Clerk of the District Court using its ECF System, which electronically notifies

17 them.

18
        1.  Gregory T. Murphy
19

20      I hereby certify that I have caused to be mailed the foregoing, by the United States Postal
   Service, to the following non-ECF participants on this case:

21

22      None

23
   the last known address, at which place there is delivery service of mail from the United States Postal
   Service.
24

25      I declare under penalty of perjury that the foregoing is true and correct.

26

27      Executed on August 11, 2008.
                                        s/ Jeffrey D. Moore
28                                      JEFFREY D. MOORE


                                       19                              08CR1550 WQH

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

08CR1550 WQH