SAN DIEGO COUNTY PROBATION DEPARTMENT

ADULT SERVICES

PROBATION OFFICER'S REPORT

| THE PEOPLE OF THE STATE OF CALIFORNIA | COURT NO. CR-138217 | DEPT. & JUDGE SDSC DEPT. 8 THOMPSON, J |
|---|---|---|
| v. | DA FILE NO. ███ | ATTORNEY Sideman Appointed |
| RN: VILLA, ALEJANDRO I. | | |
| CN: VILLA, ALEJANDRO ISRAEL | HEARING DATE/TIME 10/26/93 01:30PM | PROB CASE NO. ███ |
| AKA: VILLA, ALEJANDRO I. | PROBATION OFFICER BLACK,J:cms | PO TEL. NO. (619)579-4391 |

| ADDRESS 57 SMITH AVENUE CHULA VISTA, CA 00000 | TEL. NO. (619)498-1657 | BIRTHPLACE/CITIZENSHIP TIJUANA BC MX |
|---|---|---|

| BIRTH DATE 01/30/74 | AGE 19 | RACE HIS/LAT/MEX | SEX MALE | HT 5'06" | WT 200 | EYES BROWN | HAIR BLACK |
|---|---|---|---|---|---|---|---|

| SOC. SEC. NO. 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 | DRIVER'S LIC.NO | INS. NO. | OTHER ID DATA OTNC STOMACH, SAN DIEGO ROSE ON CHEST, PATTY L CHEST |
|---|---|---|---|

| DATE OFFENSE COMMITTED 02/28/93 | DATE CONVICTED 09/27/93 | HOW GUILTY PLEA | CUSTODY STATUS CUSTODY |
|---|---|---|---|

| INVESTIGATING ARRESTING AGENCY NATIONAL CITY POLICE DEPT | DATE INFO/COMPLAINT FILED 09/27/93 | SDSO SYSTEM NO. ███ |
|---|---|---|

| CII NO. N/A | FBI NO. N/A | ARREST REPORT NO. | SDSO BOOKING NO. ███ |
|---|---|---|---|

**CONVICTED OF:**

01    PC192(A) VOLUNTARY MANSLAUGHTER/12022(a)(1) PC

**PRE PLEA BARGAIN:**

The defendant plead guilty to Count 1: 192(a)PC as an LIO of 187PC, and has admitted an allegation pursuant to 12022(a)(1)PC; District Attorney has agreed to a stipulated 7-year prison sentence; People vs. West, stipulate to preliminary transcript for factual basis; Harvey Waiver.

**CODEFENDANT:**

Juvenile Codefendant Villa appeared in the Juvenile Court and a True Finding was made on charges of 187PC, and allegation of 12022.5PC. Codefendant Villa was sentenced to the California Youth Authority.

**RECOMMENDATION:** Prison

0001

VILLA, ALEJANDRO                        2                        10-26-93
CR138217

### CODEFENDANT (CONT.)

Codefendant ▮▮▮▮▮▮▮▮▮▮ who was 17 at the time of the offense, has been remanded to the Superior Court for adjudication as an adult. On 9-27-93, ▮▮▮▮▮ plead guilty to Count 1: 192(b)PC as an LIO of 187PC. He also admitted an allegation pursuant to 12022(a)(1) PC. Sentencing is set for today's hearing in Case ▮▮▮▮▮.

### THE OFFENSE:

SOURCES OF INFORMATION for this section

Nat'l City Police Dept. Reports dated 2-28-93 and 3-1-93; District Attorney Investigation Reports dated 3-2-93; Coroner's Report dated 3-1-93; Probation Records

On 2-28-93, at approximately 4:45 p.m., San Diego Police Officer Ketcham was in the store security office at J.C. Penney located in the Plaza Bonita Shopping Mall in Chula Vista. Officer Ketcham heard, via the store security radio that there had been a shooting in the mall. The officer proceeded through the mall to Claire's Boutique, where he found the victim, later identified as ▮▮▮▮▮ ▮▮▮▮▮, laying face down on the floor inside the store. A second San Diego Police Officer arrived, and discovered that the victim had no vital signs. The officers began CPR and mouth-to-mouth resuscitation on the victim. Shortly thereafter, Hartsons' Paramedics arrived and the victim was pronounced dead shortly after 5:00 p.m. At approximately 5:00 p.m National City Police Officers responded to the scene of the reported homicide. As they were securing the scene and interviewing witnesses, Alejandro Villa and his 15-year-old brother were being taken into custody a short distance away. A third suspect, codefendant ▮▮▮▮▮▮▮▮▮▮ had been interviewed nearby, and released. On 3-1-93, he surrendered himself to investigators at the National City Police Department.

As the investigation continued at the scene of the shooting, officers observed gunshot wounds in the victim's upper torso. The path of one bullet was traced through the victim's body, passing through a display poster, and entering a south wall of the Robinsons-May Company. A second bullet was found next to the victim's arm, and two copper-jacketed bullets were recovered from the victim's body during the autopsy. Autopsy results show the victim had suffered damage to both lungs, his aorta, his head, his esophagus, lower back, right flank and lower intestines. The murder weapon, a .38 caliber Smith and Wesson revolver, was retrieved on 3-1-93 from beneath a tree, which had been spray painted with the initials "P.H." denoting the "Paradise Hills Locos" Gang. When interviewed, the 15-year-old perpetrator of the homicide had informed officers where he had left the gun.

0002

THE OFFENSE (CONT.):

███████████████ informed police she had been in the shopping mall with ███████████████ the evening of the shooting. ███████████ was aware of who 19-year-old Alejandro Villa and his 15-year-old brother were from previous contacts. She was also aware that they were gang members. She stated she observed the 3 codefendants following the victim and a 16-year-old male companion, through the mall. She recognized that all 5 people were wearing gang attire that day. As the victim and his companion began to separate, Alejandro Villa grabbed the companion from behind and repeatedly hit him in the shoulder. The companion fell to the ground and Villa's 15-year-old brother walked over and kicked the fallen minor. ███████████ thought the 15-year-old assailant might have yelled out the word "Logan" prior to this assault. The homicide victim ███████ was warned by the 15-year-old codefendant to stay out of the fight. ███████ then began walking away. At this time, the 15-year-old pulled a gun from beneath his shirt and pointed it in the direction of ███████. ███████████████ were standing directly behind of ███████ in the line of fire. ███████ accidentally bumped into the witness and apologized. He then noted the gun pointed at him and pushed the witness aside, apparently attempting to flee. The witness saw the 15-year-old suspect fire the weapon at ███████ who grabbed his shoulder and began to fall. ███████ fell against ███████ using her shoulder to support himself. He then turned and ran into a nearby boutique. The 15-year-old chased the victim and fired several more shots. ███████████████ corroborated her information to police.

███████████████ was walking north-ward in the mall ███████ the day of the shooting. She heard a shot and dove to the ground ███████. When she looked around for the source of the shot, she saw 2 male juvenile run by her, heading into a nearby jewelry boutique. The second juvenile, subsequently identified as the 15-year-old codefendant, fired 2 rounds at the victim from the gun he was carrying. The victim fell to the ground in the boutique and the victim's assailant fled the scene through the northeast doors of the mall. The Hispanic male, subsequently identified as Alejandro Villa ran after the assailant and fled into the same direction.

The 16-year-old companion of the homicide victim informed police that he had known the victim for 3 years. He admitted that he and the victim belonged to the Paradise Hills Locos Gang. The companion stated he and the victim had been in the upper level of the mall, when they looked down and saw the 3 codefendants. The victim recognized the 3 as "Old Town National City" Gang members and told his companion that . The victim and his companion then walked along the mall. Approximately 15 minutes later, the victim was talking to a friend they had met, when the companion saw the 15-year-old codefendant pull out a gun and point it at the victim. The companion was struck from behind by Alejandro Villa and the shot sounded. Villas fled and the companion dove to the ground. More shots were heard when the companion followed the crowd into a nearby boutique. He found his friend lying on the ground, bleeding and unconscious.

**THE OFFENSE (CONT.):**

When interviewed, Alejandro Villa informed police that he and the codefendants had been walking through the mall when they were "Mad Dogged" by two "Paradise Hills Locos" Gang members. One of the gang members challenged Villa to a fight, through his body language, and Villa struck the youth in the face, knocking him to the ground. The other gang member fled and Villa heard the shot. At that point, Villa realized his 15-year-old brother had shot the other gang member. Although Villa knew his brother owned a gun, he had not known the minor had brought the weapon with him the day of the shooting. Villa's brother chased after the gang member and Villa followed him. Villa subsequently reported that his mother may have intended assaulting an ex-boyfriend of the minor's present girl friend the day of the homicide. The minor's girl friend had been threatened a few days before by her former boyfriend and the minor wanted to confront this person. Villa informed police that codefendant [REDACTED] had no participation in the fist fight and had no participation in the homicide. Villa helped his brother dispose of the murder weapon as the 2 fled the scene. Villa admitted his active affiliation with the Old Town National City Gang.

When interviewed, the 15-year-old codefendant informed police that neither his brother nor codefendant [REDACTED] knew he was in possession of a gun the day of the shooting. He admitted active gang membership in the "Old Town National City Gang." The 3 codefendants had been "Mad Dogged" by the rival gang members and Alejandro Villa got into a fist-fight with one of the 2 juveniles. The 15-year-old admitted shooting the homicide victim initially in the shoulder, then twice in his back, as he tried to flee the scene. The minor did not know why he had shot the victim, and admitted neither of the rival gang members appeared armed or dangerous to him. "I fucked up. I straight up fucked up," he informed the police. This codefendant stated companion [REDACTED] had not participated in the fist-fight and had no part in the homicide, nor the disposal of the weapon. [REDACTED] claimed the same gang as the codefendant, but was not an active member.

Codefendant [REDACTED] as initially interviewed by police near the mall at the day of the shooting. At that time, he denied any knowledge of the offense. He later turned himself in to police, but denied being involved in either the fight, or the homicide. He stated that he was not aware that the 15-year-old codefendant had a gun in his possession.

**VICTIMS FAMILY:**

VICTIM NOTIFIED OF P&S HEARING: YES    INTENDS TO APPEAR: UNKNOWN

SOURCES OF INFORMATION for this section:
Juvenile Probation Records

---

Probation Officer Paula Rogers has attempted to contact the family of the victim; however, as of the dictation of this report, no new information has been forthcoming.

The following information has been taken from the probation report on the juvenile codefendant in this case.

On 4-23-93, the mother of the victim, ███████████████████ was interviewed at the Juvenile Probation Center by Probation Officer Lisa Lorio.

███████ appeared very apprehensive throughout the interview. When questioned about her feelings over this incident, she stated, "It hurts me because he (juvenile codefendant) will still get to see his baby and I won't get to see mine. My son has been in New Mexico for 4 months before he was shot and killed. He was only home for one and a half weeks before the shooting. He really, really wanted to change. He would have been 17 years old next week. Gerardo was innocent, he had no weapons. I feel so empty because he was my baby. Things for my family will never be the same. Now we are left alone, it is just myself and ███████████████████  It is a shame because she and my son were just beginning to be good friends."

"I spoke with the lady that he ran into when he was in the mall. She told me that ███████ ran away from Villa and his friends, and that ███████ it appeared to her, was not looking for trouble. This woman told me that the last thing my son said was, "Mom, I want my Mom."

"My son's death came exactly one year to the date that he was arrested and eventually sent to Campo. My son and a friend were walking home, three guys attacked him with bricks and my son's friend defended himself with a screwdriver. For that, my son was sent to Campo. It scares me because only one year, he was shot and killed. He never had a chance."

When questioned about funeral expenses for her son, ███████████ stated that ███████ father took control over fund raisers and donations. Also, she stated that Channel "8" went to her husband's home for an interview, and through that interview, family and friends helped out with donations to pay for the funeral expenses. "I could care less about the money. It will never bring me satisfaction. The thing I want most in the whole world is to have my son again."

"My son's death has made a dramatic impact on my family. We are no longer happy and we do not see the light at the end of the tunnel. He will never come back and our lives are forever changed."
"This is a brutal and merciless attack on my son."

DEFENDANT'S STATEMENT:

SOURCES OF INFORMATION for this section

The defendant's interview

The defendant did not submit a written statement for this report.

When interviewed, the defendant stated he is sorry for what his brother did. He said that he did not know his brother was armed when they went to the mall. In regards to his brother's statement concerning the fact that they went to the mall, seeking confrontation with his brother's girl friend's ex-boyfriend, the defendant said that this statement from the police report was not accurate. He indicated that the 3 codefendants went to the mall for a walk, and the fight just happened.

CRIMINAL HISTORY:

SOURCES OF INFORMATION for this section
CII and FBI dated 9-30-93, local law enforcement records dated 10-12-93, Probation Records

1-5-86      Unreported  459PC;484/           Counselled & closed
                        488PC                by Probation.

The defendant, at 11 years of age, had been arrested for going into King Elementary School through a broken window. As there was no loss and it was the minor's first arrest, it was handled on a counselled and closed basis.

3-17-89     Unreported  626.9PC              5-4-89: TF 626.9
                        Poss of              PC,def. ordered
                        Firearm              ward of the Crt.,
                        on School            50 hrs. community
                        Grounds              service,$75 restit.
                                             gang conditions

On 3-17-89, at approximately 11:00 a.m., National City Police were called to Granger Junior High School. A teacher at Granger, Kathleen Chanine had seen the defendant with a handgun. It was subsequently confiscated. During questioning, the defendant stated that he needed the gun because there was going to be a gang fight after school. He was originally booked into Juvenile Hall by National City Police, and subsequently released on house arrest.

VILLA, ALEJANDRO                      7                           10-26-93
CR138217

### CRIMINAL HISTORY (CONT.):

| | | | |
|---|---|---|---|
| 10-5-89 | NCPD | 12020(a)PC; 120500(a)PC; 602/777 W&I X 2. | 10-19-89: TF 602/ 777 X 2, 12022(a) PC & 125000(a)VC Dism FOJ, contin Warr of the Crt, 20 dys Juvenile Hall stayed, gang conditions; prob. terminated Jan '92. |

In this violation, the defendant was found to have been associating with National City Gang Members. He states that several of his friends approached him for a ride. He told them he was not allowed to associate with them; however, they persisted, and they finally gave in. Probation was eventually terminated in this case, as the defendant reached the age of majority.

| | | | |
|---|---|---|---|
| 2-28-93 | NCPD | 187PC 12022(a) PC | CR139096: 4-27-93 compl. filed, fel.; 4-28-93 plead not guilty; 5-14-93 bound over; 9-27-93 P/G, 192(b)PC LIO 187PC, & 12022(a) (1)PC; Instant Offense. |

### ADJUSTMENT TO PROBATION::

SOURCES OF INFORMATION for this section

Probation Records

The defendant was on juvenile probation for approximately 3 years. There were occasionally problems, and several probation violations. The defendant has shown overall adjustment, including a positive school attendance.

PERSONAL HISTORY:

The following information was offered by the defendant. Unless noted otherwise it has not been verified.

Significant Family Information:

The defendant was born in Tijuana, Mexico, and is the 4th of 5 children. His parents have moved their residence from Mexico to San Diego and back to Mexico. It caused some difficulty with his school attendance. He states that his mother and father, who have been married since 1970, are currently undergoing difficulties he believes will lead to divorce.

Family Criminal History:

The defendant's younger brother is the juvenile codefendant in this case, and has been sentenced to California Youth Authority for 187PC, and 12022(a)(1)PC.

Education:

The defendant completed the 10th Grade, however, he states he was kicked out of school because he was living in Mexico at that time.

Employment History:

The defendant's last full time employment was in 1992, when he worked for the Vista Pipe Line Company. He states he was employed there for approximately one year, laying pipe. Prior to this he worked at the Catamaran Hotel for approximately 8 months, setting up and serving at banquets.

Source of Support:

Parents.

Financial Condition:

Indigent.

Number of Dependents & Ages/Relationship to Defendant:

The defendant has one child, a boy one year old, who lives with his mother in National City, CA. He states he gives her money for the child's support when he is working.

VILLA, ALEJANDRO                             9                              10-26-93
CR138217

## PERSONAL HISTORY (CONT.):

### Military Status:

None.

### Marital Status:

Single.

### Psychological/Medical Problems:

Claims none.

### Physical Health:

Good.

### Substance Abuse History:

The defendant claims he does not use drugs of any type and does not drink alcohol.

### Gang Affiliation:

The defendant was a member of the "Old Town National City" Gang between the ages of 15 and 18. He is a documented member of this gang, according to law enforcement records. The defendant states he has not been actively involved with this gang in the recent past. The defendant's younger brother was also a documented member of this gang.

SENTENCING DATA:

As the defendant has agreed to a stipulated plea of 7 years, circumstances in mitigation and aggravation will not be discussed.

EVALUATION:

Circumstances Supporting a Grant of Probation:

Rule 414(a)(6):  According to statements by the defendant and the juvenile codefendants, he was a passive participant in this offense.

Rule 414(a)(8):  The manner in which the offense was carried out demonstrates no particular criminal sophistication or professionalism on the part of the defendant.

Rule 414(b)(2):  The defendant's performance on a grant of juvenile probation was fair.

Rule 414(b)(4):  The defendant is 19 years of age, and appears to be in good health and possesses normal mental facilities.  He has family ties to the community and claims a stable, if not a recent employment history.

Rule 414(b)(6):  The defendant's conviction on this felony is likely to have considerable prospects in the future.

Rule 414(b)(7):  The defendant has expressed remorse concerning the outcome of this offense.

Circumstances Supporting a Denial of Probation:

Rule 414(a)(1):  As this offense resulted in the death of the victim, it most be considered as the highest degree of seriousness.

Rule 414(a)(3):  The victim in this case was a 16 year old, who was in a public place and had no means of defending himself.

Rule 414(a)(4):  Injuries received in this offense resulted in the death of the victim.

Rule 414(b)(1):  The defendant has a prior record of criminal conduct, including the possession of weapons, which occurred within the last 3 years.

Rule 414(b)(4):  In light of the fact that this appears to be a gang-related offense, the defendant's continued involvement in gang activities appears to be a negative factor in recommending a grant of probation.

Rule 414(b)(8):  In light of the defendant's documented gang association and previous weapons' violations, the undersigned believes that if not imprisoned, he represents a danger to the community.

DISCUSSION:

Before the Court for sentencing is a 19-year-old man who has plead guilty to manslaughter as well as an allegation alleging the use of a weapon during a felony offense. Though not personally armed, the defendant together with two juvenile codefendants participated in a fight, which led to the death of the victim in this case. The defendant's younger brother shot and killed the victim during the fight. The defendant claims he had no knowledge that his brother was armed, and had no intention of assaulting anyone when the three individuals in this case went to the Plaza Bonita Mall. This is partially contradicted by the statements of the juvenile codefendant who indicates that they had gone to the mall, looking for a specific person he intended to fight with, and possibly shoot. The defendant has a record of juvenile offenses, and is a documented gang member, as is his younger brother.

Considering the gravity of this offense, the undersigned does not believe that the defendant is an appropriate candidate for a grant of probation, and the 7-year stipulated sentence appears appropriate.


CUSTODY DATA:

At the time of sentencing, PC 1191.3 requires the Court to make an oral statement that statutory law permits the award of conduct and work-time credits up to one-third or one-half of the sentence that is imposed by the Court; that the award and calculation of credits is determined by the Sheriff in cases involving imprisonment in county jails; by the Department of Corrections in cases involving imprisonment in the state prison; and that credit for presentence incarceration served by the defendant is calculated by the Probation Department under current state law.

| Date Confined | Date Released       | Place    | Custody Days |
|---------------|---------------------|----------|--------------|
| 2-28-93       | 10-26-93(In Custody)| Cty Jl.  | 252          |
|               |                     | 4019 PC  | 126          |
|               |                     | Total    | 378          |

**RECOMMENDATION:**

That probation be denied and the defendant be committed to the Department of Corrections for the total term of 7 years with credit for time served of 252 actual days and 126 days 4019 PC credits, a total of 378 days credit for time served; and further, that the defendant pay a restitution fine pursuant to 13967 Government Code in the amount of $52,500, to be paid forthwith or as provided in 2085.5 PC.

**Term Recommendation Breakdown by Count is as Follows:**

| Crime | Suggested Base Term | Recommended Term | Recommended Stay |
|---|---|---|---|
| 192(a) PC | Mid-6 yrs. | 6 yrs. | -0- |
| Alleg. pursuant to 12022(a)(1) PC | 1 yr | 1 yr. | -0- |

7 yrs. Total Term

Respectfully submitted,

GERARD A. WILLIAMS
Acting Chief Probation Officer

By: *James A Black*

JAMES A. BLACK
Deputy Probation Officer
579-4380

Approved *Elliott C Binley*
ELLIOTT C. BINLEY, Supervisor

I have read and considered the foregoing report.

_____
JUDGE OF THE SUPERIOR COURT

PROB. 2185 (6-19-91)

0012