**GREGORY T. MURPHY**
California State Bar No. 245505
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, CA 92101-5008
(619) 234-8467/Fax: (619) 687-2666
E-Mail: gregory_murphy@fd.org

Attorneys for Alejandro Israel Villa-Anquiano

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(HONORABLE WILLIAM Q. HAYES)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>ALEJANDRO ISRAEL VILLA-ANQUIANO,<br><br>        Defendant. | Case No. 08CR1550-WQH<br><br>DATE:   March 11, 2008<br>TIME:   9:00 a.m.<br><br>**MR. VILLA-ANQUIANO'S REPLY TO THE GOVERNMENT'S RESPONSE IN OPPOSITION** |

Alejandro Villa-Anguiano, through undersigned counsel Gregory T. Murphy and Federal Defenders of San Diego, Inc., submits the following reply to the government's response in opposition to Mr. Villa's motion to dismiss the indictment.

## I.

## REPLY

**A.    Mr. Villa-Anquiano Was Not Required to Exhaust Remedies**

Mr. Villa previous argued that the failure of his deportation proceeding to comport with due process excuses his failure to appeal his deportation order. Specifically, Mr. Villa pointed to the mass silent waiver of the right to counsel, the ineffective admirals regarding his right to appeal, and the IJ's failure to advise him of the possibility of relief that was apparent from the record.

The government's response addresses neither the mass silent waiver of the right to counsel nor the IJ's failure to advise Mr. Villa of relief for which he was eligible. As demonstrated in his earlier brief, either

of these independently would be sufficient to excuse Mr. Villa's failure to appeal the deportation order. In particular, "[w]here the record contains an inference that the petitioner is eligible for relief from deportation, but the IJ fails to advise the alien of this possibility and give him the opportunity to develop the issue, **we do not consider an alien's waiver of his right to appeal his deportation order to be considered and intelligent.**" *United States v. Pallares-Galan*, 359 F.3d 1088 (9th Cir. 2004). Notably, while the government disputes Mr. Villa would have been granted relief, the government does not dispute he was eligible for relief under INA § 212(c) and does not address Mr. Villa's arguments that he was eligible for relief under §212(h).

**B.    A Mass Silent Waiver of the Right to Counsel Always Violates Due Process**

Although it does not specifically distinguish the controlling authority, the government evidently disagrees with the Ninth Circuit that a mass silent waiver of the right to counsel is always invalid. *See* GRB 4-5 ("Defendant's has also asserted that the Government failed to prove that his appellate waiver was 'knowing and intelligent' because his waiver followed an invalid waiver of the right to counsel and was based on inadequate admirals regarding his rights. However, defendant's due process rights were not violated.").

The law on this issue is clear and unequivocal. At the time of Mr. Villa-Anquiano's removal proceedings, 8 C.F.R. § 242.16(a) provided in pertinent part:

> The Immigration Judge shall advise the respondent of his right to representation, at no expense to the Government, by counsel of his own choice authorized to practice in the proceedings **and require him to state then and there whether he desires representation**; [and] advise the respondent of the availability of free legal services programs ... in the district where the deportation hearing is being held[.]

8 C.F.R. § 242.16(a) (1991) ( *removed and reserved 62 Fed.Reg. 10312, 10382 (Mar. 7, 1997*)) (emphasis added).

The Ninth Circuit has specifically held that the IJ violates this regulation by accepting a mass silent waiver of the right to counsel. *See United States v. Ahumada-Aguilar*, 295 F.3d 943, 947 (9th Cir. 2002) ("Acceptance of an implicit waiver of the right to counsel is **unequivocally inconsistent** with the duty of an IJ to require the respondent to 'state then and there whether he requires representation.'")(emphasis added). Moreover, subsequent cases have made clear that the mass silent waiver procedure violates due process even after the elimination of the regulation. In *Biwot v. Gonzales*, 403 F.3d 1094 (9th Cir. 2005), for example, the Ninth Circuit held that due process requires IJs "at a minimum[, ...] to inquire whether the petitioner wishes counsel, determine a reasonable period for obtaining counsel, and assess whether any waiver of counsel is

knowing and voluntary." *See also Hernandez-Gil v. Gonzales,* 476 F.3d 803, 806 (9th Cir.,2007) ("For a waiver of the right to counsel to be valid, an IJ must (1) inquire specifically as to whether petitioner wishes to continue without a lawyer; and (2) receive a knowing and voluntary affirmative response. Failure to obtain such a waiver is a denial of the right to counsel.")(citations omitted).

Because the "mass silent waiver" procedure satisfies none of these requirements, Mr. Villa-Anquiano's removal proceeding violated due process as a matter of law.

**C.     INA 212(c) Specifically Permits Respondents to Waive "Aggravated Felonies"**

Mysteriously, the government asserts Mr. Villa was "not entitled to section 212(c) relief as he was deportable as an aggravated felon." GRB 6. In fact, INA § 212(c) *explicitly* provided relief for persons convicted of aggravated felonies for which they served fewer than five years. *Compare* 8 U.S.C. § 1101(a)(43)(1994)(aggravated felony is "crime of violence...for which the term of imprisonment *imposed*...is at least 5 years") *with* 8 U.S.C. § 1182(c)(1994)(permitting waiver of aggravated felonies unless respondent has *served* a term of imprisonment of at least 5 years.). The government's argument on this point is without merit and should be rejected in its entirety.

**D.     The Government Misconstrues the Phrase "Crime of Violence"**

The government "asserts that P.C. section 192(a) qualifies as an aggravated felony under the categorical approach." GRB 5. In support of this assertion, he relies on two cases discussing the phrase "crime of violence" as it is used in the sentencing guidelines. *See* GRB at 6 (citing *United States v. Bonilla-Montenegro*, 331 F.3d 1047, 1050-1051 (9th Cir. 2003) and *United States v. Trinidad-Aquino*, 259 F.3d 1140, 1146 (9th Cir. 2001)).

These citations are unpersuasive because the Sentencing Guidelines define the term "crime of violence" differently than the immigration code. In particular, as the Ninth Circuit pointed out in *Bonilla-Montenegro*, the guidelines specifically enumerate certain generic crimes, including manslaughter, within the definition of "crime of violence" at USSG § 2L1.2. By contrast, the definition at 18 U.S.C. § 16 does not enumerate any particular offenses as crimes of violence. Instead, this definition applies generally to (1) any offense that has an element the "use, attempted use, or threatened use of physical force against the person or property of another" or (2) "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." The Supreme Court has held that

the verb "use" in both sections requires "active employment" of force and "a higher *mens rea* than merely accidental or negligent conduct." *Leocal v. Ashcroft,* 543 U.S. 1, 11 (2004).

From the perspective of the "crime of violence" definition relevant to this case, Cal. P.C. §192(1) plainly is overbroad. Contemporary California law consistently confirms that manslaughter can be committed recklessly by a showing of a "conscious disregard for life." In fact, the language "conscious disregard" is merely an expanded phrase that describes the traditional mental state constituting recklessness. Thus, the California Supreme Court in *People v. Lasko*, 23 Cal.4th 101, 999 P.2d 666 (Cal., 2000), quotes secondary authorities which describe the "conscious disregard" standard as a form of recklessness when describing the consistency between its formulation and the common law mental state for manslaughter. *See* 999 P.2d at 672. *Lasko* then goes on to cite the Ninth Circuit's decision in *United States v. Paul*, 37 F.3d 496, 499 (9th Cir. 1994), as embracing the same definition of the required mental state for manslaughter, quoting *Paul* as stating, "'While most voluntary manslaughter cases involve intent to kill, it is possible that a defendant who killed *unintentionally but recklessly* with extreme disregard for human life may have acted in the heat of passion with adequate provocation.'" Id (emphasis added).

The Ninth Circuit in *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121 (9th Cir. 2006) (*en banc*), also observed that recklessness involves a conscious disregard of the potential harm. *See* 466 F.3d at 1130 (finding Arizona definition of recklessness as "consciously disregard[ing] a substantial and unjustifiable risk that the result will occur" brought Arizona domestic violence offense within Leocal's limitation against unintentional crimes of violence). The same *en banc* decision approved of Third Circuit decisions where the definition of "recklessness" was also couched in the "conscious disregard" formulation. *See id* at 1129.

In light of the prosecutor's failure even to cite--much less distinguish--relevant authority, the Court should consider the government's arguments on this issue waived.

**E.    Mr. Villa-Anquiano was Eligible for Relief Pursuant to INA § 212(h)**

Mr. Villa argued that he was eligible for INA § 212(h) relief because he was not subject the limitations on waivers of aggravated felonies for lawful residents. The government, again, completely fails to address the argument.

The Fifth Circuit--to counsel's knowledge the only circuit to address the issue--sides squarely with Mr. Villa. After scrutinizing both the text of the INA §212(h) and the statutory context, the court held that

1  "for aliens who adjust post-entry to LPR status, § 212(h)'s plain language demonstrates unambiguously
2  Congress' intent not to bar them from seeking a waiver of inadmissibility" despite a conviction for an
3  aggravated felony. This Court should follow the Fifth Circuit's example.

**F.     Mr. Villa Need Not Show Prejudice**

The prosecutor posits that Mr. Villa bears the burden of showing prejudice "[e]ven assuming there were defects in defendant's deportation hearing, and assuming he was not deportable as an aggravated felon." GRB 6. The prosecutor is incorrect.

When a respondent is not deportable as charged, no further prejudice need be shown. *See United States v. Camacho-Lopez*, 450 F.3d 928, 930 (9th Cir. 2006) ("Camacho's Notice to Appear charged him as removable only for having committed an aggravated felony [but] Camacho's prior conviction did not fit that definition. Thus, Camacho was removed when he should not have been and clearly suffered prejudice."). Further, as argued previously, a deprivation of the right to counsel is structural error and requires no additional showing of prejudice. Tellingly, the prosecutor responds to neither of these arguments.

**G.     The Presence of an Attorney Might have Affected the Proceedings**

The government's last argument is that Mr. Villa, assuming he was required to show prejudice, could not plausibly have been granted relief under either INA §§ 212(c) or (h). This argument, too, misses the mark. While Mr. Villa certainly asserts that he had plausible claims to both types of relief, this Court need not so conclude. Instead, to find prejudice, the court need only determine the deprivation of the right to counsel "potentially affected the outcome of the proceedings." *Ram v. Mukasey*, 529 F.3d 1238, 1242 (9th Cir. 2008).

The Ninth Circuit has set an extremely low threshold for this finding. Mr. Villa need only show that some relief was possible; he "need not explain exactly what evidence he would have presented in support of his application." *Hernandez-Gil*, 476 F.3d at 808 (9th Cir. 2007). In *Ram*, for example, the Ninth Circuit found the respondent had been prejudiced simply because "an attorney would have helped Ram understand his criminal record as well as his legal rights and evidentiary burden, so that he would not have admitted to allegations and charges that were spurious and that the DHS could not substantiate with proper documentation"; because DHS might not be able to prove up the aggravated felon charge; and because "with an attorney, he would not have been forced ... to present a case with no evidence [and virtually no argument, and to] answer the IJ's inquiries without any idea of their legal significance." *Id*. at 1242-43. The court

identified no specific relief for which the defendant was eligible. Moreover, while the panel noted that Ram would be eligible for asylum if the government could not sustain its aggravated felony charge, *id*., the Ninth Circuit did not require him to show it was plausible he would have been granted relief. Indeed, the Ninth Circuit did not even require the respondent to show he would have *applied* for such relief to conclude that the presence of an attorney could "potentially" have affected the proceeding. Likewise, in *Biwot v. Gonzales*, 403 F.3d 1094 (2005), the Ninth Circuit concluded the respondent "easily cleared" the prejudice hurdle without considering the merits of any claim. Prejudice was established simply because "[w]ith an attorney, he would not have been forced to proceed *pro se*, to present a case with no evidence, to answer the IJ's inquiries without any idea of their legal significance, or to purport unwittingly to waive his appeal." *Id*. at 1100.

      This case is no different. As in *Ram*, an attorney would not have permitted Mr. Villa to admit to allegations the government could not prove, such as that he had been convicted of a firearms offense. An attorney also would have urged Mr. Villa to contest the allegation that he was convicted of an aggravated felony, an allegation that is unsupportable in light of subsequent Supreme Court developments. A competent attorney also would have urged Mr. Villa to seek relief under INA §§ 212(c) or (h), would advised Mr. Villa and his fiancée to marry,[1] would have interviewed the relevant family, would have documented Mr. Villa's rehabilitative efforts in prison, and would have presented evidence of his school records, improved conduct through the youth authority, importance to his parents, work history, and efforts as a father. A competent attorney would have worked with Mr. Villa to elaborate on the remorse he expressed to the probation officer. Given these many potential equities, it is inconceivable that the presence of an attorney could not "potentially [have] affected the outcome of the proceedings." *Cf. I.N.S. v. St. Cyr*, 533 U.S. 289, 296 n.5 (2001)(citing statistics showing that 51.5% of the applications for § 212(c) relief for which a final decision was reached between 1989 and 1995 were granted.).

/ / /

---

[1] Marriage to a United States citizen results in an immediately available visa, which then supports an application for adjustment (or readjustment) of status to lawful permanent resident. *See* 8 U.S.C. §1151(b)(2)(A)(I); *Matter of Rainford*, 20 I. & N. Dec. 598 (BIA, 1992). If necessary, the applicant can use either of the above waivers in association with the application for admission. *See In re Azurin*, 23 I. & N. Dec. 695 (BIA, 2005)(Applicant for re-admission may use INA §212(c) to waive "crime involving moral turpitude" ground of inadmissibility.)

6

**H.    The Prosecutor Mischaracterizes Mr. Villa's Personal History**

Mr. Villa was 19 years old at the time of his arrest in 1993. Despite his youth, Mr. Villa apparently had approximately one year and eight months of full time employment. Gov. Ex. 4. Accordingly, the prosecutor's concern that Mr. Villa's work history was "spotty" is misplaced. GRB 10.

Likewise, the prosecutor dismisses Mr. Villa as having no "positive value to the community" and faults his failure to produce evidence he was rehabilitated at the time of his hearing in 1997. GRB 12. The problem, of course, is that the procedural flaws in his proceeding prevented Mr. Villa from presenting this evidence at the time of his release. Ultimately, however, the proof is in the pudding. For more than a decade, Mr. Villa has been a law-abiding citizen and a role model within his community. With the benefit of hindsight, it is certainly plausible Mr. Villa would have persuaded the IJ of the sincerity of his rehabilitation.

In the final analysis, the prosecutor's "argument" amounts the incredulous assertion that no immigration judge would have granted 212(c) relief to a 22-year-old new father with a United States citizen fiancée who had lived in the United States since he was an infant, who supported his physically ill parents, and who had put his gang past behind him until he was caught up in his brother's crime. To the government's thinking, Mr. Villa's presence when his brother shot someone outweighs any equities he could show. This, mercifully, is not the law.

Mr. Villa's qualification for INA §212(h) is even clearer because, unlike §212(c) relief, the standard Mr. Villa must meet does not depend on the severity of his offense. The Ninth Circuit's rule--cited in Mr. Villa's opening brief but not addressed in the government's response--controls: to establish "plausible" eligibility for relief under INA §212(h) in this collateral attack, Mr. Villa is required only to show a qualifying relative to which he provides "something more" than financial assistance. *See United States v. Arrieta*, 224 F.3d 1076, 1082-3 (9th Cir., 2000)("Of particular importance is the evidence Mr. Arrieta produced of the effect that separation from him would have on his immediate family members, as to whom he provided essential emotional and other non-economic familial support... [A]lthough the evidence produced by Mr. Arrieta does not guarantee that he would have been granted a § 212(h) waiver, it provides the "something more" that makes it plausible that he would have received one."). He plainly has met that standard.

/ / /

/ / /

## II.

## CONCLUSION

The government's untimely response is unpersuasive because it contains numerous serious misstatements of law and fact. For the reasons described above and in his earlier motion, Mr. Villa-Anquiano asks the Court to order the indictment against him dismissed.

                                                            Respectfully submitted,

DATED:      August 13, 2008          /s/ Gregory T. Murphy
                                                         **GREGORY T. MURPHY**
                                                         Federal Defenders of San Diego, Inc.
                                                         Attorneys for Alejandro Israel Villa-Anquiano

1 **GREGORY T. MURPHY**
California State Bar No. 245505
2 **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
3 San Diego, CA 92101-5008
(619) 234-8467/Fax: (619) 687-2666
4 E-Mail: gregory_murphy@fd.org

5 Attorneys for Alejandro Israel Villa-Anquiano

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10                   **(HONORABLE WILLIAM Q. HAYES)**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 08CR1550-WQH |
| Plaintiff, | ) | |
| v. | ) | **CERTIFICATE OF SERVICE** |
| ALEJANDRO ISRAEL VILLA-ANQUIANO, | ) | |
| Defendant. | ) | |

Counsel for Defendant certifies that the foregoing pleading is true and accurate to the best of his information and belief, and that a copy of the foregoing document has been served this day upon:

Jeffrey David Moore
Jeffrey.Moore@usdoj.gov,debra.huntley@usdoj.gov,efile.dkt.gc1@usdoj.gov

Respectfully submitted,

DATED:      August 13, 2008          /s/ Gregory T. Murphy
                                     **GREGORY T. MURPHY**
                                     Federal Defenders of San Diego, Inc.
                                     Attorneys for Alejandro Israel Villa-Anquiano