UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE WILLIAM Q. HAYES)**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 08CR1550-WQH |
| Plaintiff, | DATE:        March 18, 2008 |
| v. | TIME:        2:00 p.m. |
| ALEJANDRO ISRAEL VILLA-ANQUIANO, | **EXPERT DECLARATION OF** |
| Defendant. | **JONATHAN MONTAG, ESQ** |

## DECLARATION OF JONATHAN MONTAG, ESQ.

I, Jonathan D. Montag, an attorney authorized to practice law in the State of California and admitted to practice before the United States District Court for the Southern District of California, submit this declaration under penalty of perjury.

Alejandro Villa-Anguiano, born January 30, 1974, was ordered deported by an immigration judge in El Centro in January 1997 based on his September 27, 1993, conviction for voluntary manslaughter, Cal. Penal Code § 192, with an enhancement because of a gun under Cal. Penal Code § 10222(a)(1). At issue is whether an immigration judge could have plausibly granted Mr. Villa-Anguiano relief from deportation. The assumption for this analysis is that Mr. Villa was properly found deportable for the offense, i.e., that voluntary manslaughter is a deportable offense for being an aggravated felony.

If Mr. Villa-Anguiano was deportable for the offense, he could have sought relief in immigration court through adjustment of status. He had a United States citizen girlfriend, Angelina Flores-Villa, who indicates in a declaration that she would have married Mr. Villa at the time of his deportation proceedings. She actually did marry him in 2004 and had three children with him, probative that the marriage should have been seen as a bona fide one. By seeking adjustment of status, Mr. Villa would have been subject to the grounds of inadmissibility. There is no ground of inadmissibility for being an aggravated felony. Adjustment of status under INA § 1255 is a discretionary benefit, meaning an immigration judge would have to make a balancing test to determine if adjustment of status was warranted notwithstanding the absence of a ground of inadmissibility. If the conviction was considered a crime of moral turpitude, which is a ground of inadmissibility, then in order to adjust status Mr. Villa-Anguiano would have needed a waiver of inadmissibility, which should have been available under INA § 212(c), which also requires a balancing test.

The balancing test for adjustment of status and for a 212(c) waiver, is the same. Rashtabadi v. INS, 23 F.3d 1562, 1570 (9th Cir. 1994) ("One general, analytical approach governs all decisions on whether to grant discretionary relief. Matter of Marin, 16 I. & N. Dec. 581, 586 (BIA 1978).") Rashtabadi was a case regarding discretionary granting of adjustment of status while Matter of Marin addresses 212(c) relief.

/ / /

/ / /

Favorable considerations in this balancing test include the following factors:

1. Family ties within the United States,

2. Residence of long duration in this country (particularly when the inception of residence occurred while the respondent was of young age),

3. Evidence of hardship to the respondent and family if deportation occurs,

4. Service in this country's Armed Forces,

5. A history of employment,

6. The existence of property or business ties,

7. Evidence of value and service to the community,

8. Proof of a genuine rehabilitation if a criminal record exists, and

9. Other evidence attesting to a respondent's good character.

Matter of Marin, 16 I. & N. 581, 584-585 (BIA 1978).

Among the factors deemed adverse to a respondent's application are:

10. the nature and underlying circumstances of the exclusion ground at issue,

11. the presence of additional significant violations of this country's immigration laws,

12. the existence of a criminal record and, if so, its nature, recency, and seriousness, and

13. the presence of other evidence indicative of a respondent's bad character or undesirability as a permanent resident of this country.

Id. at 584.

Evidence in the record indicates that Mr. Villa's positive equities outweighed his negative equities. At a minimum, they plausibly did. He had two United States citizen parents and a United States citizen fiancee. While the record does not indicate that Mr. Villa lived with his fiancee, if they indeed had, this relationship would have had the same weight as a legal marriage. Kahn v. INS, 36 F.3d 1412, 1414-1415 (9th Cir. 1994)("In the absence of an express or implied Congressional intention to the contrary, the Board's adoption of a standard that conclusively defines family ties under § 212(c) by reference to legal classifications that vary from state to state is not rationally related to the INA's [Immigration and Nationality Act] purpose and is not a permissible interpretation of the Act.")

Mr. Villa's residence was of long duration and from a young age, as he came to the United States

1   soon after his birth. Additionally, an immigration judge would have seen that Mr. Villa's problems were

2   homegrown, and not imported from abroad.

3          Regarding hardship to Mr. Villa and his family, the evidence indicated that Mr. Villa lived with his

4   parents his entire life except for when he was incarcerated. This is an indication of close ties that would lead

5   to great emotional hardship to Mr. Villa and his parents if he were deported. The hardships to his child from

6   being separated from his father are obvious. The close family ties and residence of long duration amount to

7   the unusual or outstanding equities needed for a grant of relief. See, Matter of Marin, supra, at 583.  It is

8   important to note that the requirement of hardship under Matter of Marin is not "extreme hardship," but

9   simply the more easily attainable hardship. Further, the showing of any one Marin factor is not mandatory

10  to obtain discretionary or 212(c) relief. Thus one need to have owned property or have been a veteran, or

11  have worked to obtain relief from an immigration judge.

12         Regarding his employment history, the record indicates that Mr. Villa was an important help to his

13  father in his father's businesses by working as a mechanic on his vehicles and assisting him in selling tools

14  and in his handyman sideline employment. The probation report also notes a year of work for the Vista

15  Pipeline Company and eight months of work at the Catamaran Hotel. It is worth note that Mr. Villa was sent

16  to prison at age 19, so his opportunity to show many years of employment was limited. Nonetheless his

17  employment history is quite lengthy for a 19 year old and shows a strong work ethic and work history

18  through work with his father and his two other jobs.

19         Regarding good character and rehabilitation, letters from Mr. Villa's parents and wife discuss his

20  good character since 1997.  This evidence of good character is certainly probative that he was a person of

21  good character at the time of his deportation proceeding. Testimony that would have been elicited then of

22  good character should have been deemed credible as the next ten years of his conduct and no contact with

23  law enforcement demonstrates that he indeed is a person of good character and was rehabilitated.

24         These strong positive equities would then have to be balanced against the negative ones, Mr. Villa's

25  conviction and other contact with law enforcement. In evaluating the conviction and other conduct, the

26  immigration judge was permitted to delve into the circumstances of the conviction to determine their

27  seriousness. Matter of Edwards, 20 I. & N. Dec. 191 (BIA 1990) ("While the Immigration Judge and this

28  Board may not go beyond the record of conviction to determine the guilt or innocence of the alien, it is

4

1  proper to look to probative evidence outside the record of conviction in inquiring as to the circumstances

2  surrounding the commission of the crime in order to determine whether a favorable exercise of discretion

3  is warranted.")

4      There was powerful evidence in the record that Mr. Villa's People v. West[1], plea, a no contest plea,

5  to voluntary manslaughter sounds appreciably worse than it was. The incident occurred on February 28,

6  1993, and the plea was taken six months later. Mr. Villa took a plea which led to a sentence of seven years

7  confinement, with Mr. Villa realizing he would only have to serve half that time. Calculating the downside

8  risk of a sentence far in excess of what he would serve under the plea agreement and the fact that time had

9  already passed[2], which amounted to time served, and the time it would take for the case to be decided, all

10  the while detained, if he did not take the plea deal, he took it.

11      The immigration judge was not permitted to go behind the plea to determine innocence or guilt, but

12  he could take into account the circumstances surrounding the conviction, such as, according to the probation

13  report:

14      1. Mr. Villa was a passive participant;

15      2. His crime showed no particular criminal sophistication;

16      3. Mr. Villa did not possess or shoot a gun at the time of the shooting;

17      4. The shooter was Mr. Villa's 15 year old brother with whom Mr. Villa was out at the mall;

18      5. Mr. Villa asserts he did not know his brother had a gun;

19      6. Mr. Villa's brother asserted that Mr. Villa had nothing to do with the shooting;

20      7. Mr. Villa expressed remorse for the incident.

21      These facts are uncontroverted. An immigration judge could certainly find from these facts that Mr.

22  Villa's actual deeds were not as serious as they sounded.

23      Mr. Villa's other negative equity is his juvenile record, recited in the probation report. It shows two

24  minor offenses, entering an elementary school at age 11 through a broken window where nothing was taken,

25  associating with gang members after this being forbidden to him at age 15 when friends asked him for a ride

26  ────────────

27  [1]People v. West, 3 Cal. 3d 595, 91 Cal. Rptr. 385, 477 P.2d 409, 411 (Cal. 1970).

28      [2]At the time of the guilty plea Mr. Villa had accrued 378 days of custody according to the probation report.

and persuaded him to give them one, and, more serious, possession of a firearm at age 15. Between the ages of 15 and 19, when he was arrested after his brother shot someone, he had no encounters with law enforcement.

The probation report indicates that Mr. Villa showed "overall adjustment, including a positive school attendance," fair performance on probation, had family ties and ties to the community.

Weighing these factors, Mr. Villa had strong positive equities, particularly long residence, the family ties of his family, including a child, a substantial work history, evidence of good character, remorse, and rehabilitation. A reasonable immigration judge could have found these equities outweighed some ambiguous negative ones. It is plausible he would have been granted relief.

Since 1994, I have represented aggravated felons who have been granted 212(c) relief and recidivist criminals who have been granted relief or related relief. The facts of this case are not out of line with others where relief has been granted.

DATED: 8/18/2008

Respectfully submitted,

Jonathan D. Montag, Esq.

6

# JONATHAN D. MONTAG

Law Offices of Jonathan D. Montag
110 West C Street, Suite 1809
San Diego, CA 92101
Tel: (619) 230-1420; Website: www.montaglaw.com; Email: jdmontag@montaglaw.com

## EDUCATION

| | |
|---|---|
| 1991-1993 | **University of San Diego School of Law**, San Diego, California |
| | J.D. May 1994 |

| | |
|---|---|
| 1983-1985 | **Uppsala University**, Uppsala, Sweden |
| | Major: Economics, 2 year graduate program |

| | |
|---|---|
| 1977-1982 | **University of Pennsylvania**, Philadelphia, Pennsylvania |
| | B.A. Double Major: Near Eastern Studies, International Relations |

| | |
|---|---|
| 1979-1980 | **American University in Cairo**, Cairo, Egypt |
| | Junior Year Abroad Program |

## EMPLOYMENT

2001- Present  Law Offices of Jonathan D. Montag, Practice concentrating in immigration law.

1994-2001   Law Offices of Jan Joseph Bejar, San Diego, California. Associate in immigration law practice.

1986-1991   Public Affairs Specialist, U.S. Army
Various positions as journalist, newspaper designer and editor, and media\ relations specialist. Final assignment was as Public Affairs Supervisor for U.S. Army Japan and IX Corps.  Honorably discharged July 1991.

## PROFESSIONAL HIGHLIGHTS

Certified Specialist in Immigration and Nationality Law designated by the State Bar of California Board of Legal Specialization.

Present        Commissioner, Immigration and Nationality Law Advisory Commission, State Bar of California Board of Legal Specialization

Present        Fee Arbitrator, San Diego County Bar Association Fee Arbitration Committee

Present        Editorial Advisory Board, Immigration Law Today, A Publication of the American Immigration Lawyers Association.

March 2008   Speaker, AILA Fundamentals Conference, Anaheim, California.

January 2008    Speaker, State Bar of California Section Education Institute, "Immigration Consequences of Criminal Convictions and Crimes.

November 2007  Speaker, AILA California Conference, San Diego, California, "212(c) and Retroactivity."

May 2007       Designated a San Diego Super Lawyer by Super Lawyer Magazine.

March 2007      Speaker, AILA Beginners Conference, Atlanta, Georgia. Edited and updated article for conference book on adjustment of status.

January 2007   Speaker, California Public Defenders Association, Immigration Detention and Bond, San Diego, California.

2006           California Lawyer of the Year Attorney of the Year for Extraordinary Achievement in Immigration Law in 2005

Fall 2006      Speaker, AILA's 19th Annual California Chapters Conference, Monterey, California

June 2006      Speaker, AILA National Conference, San Antonio, Texas.

Fall 2005      Speaker, AILA's 18th Annual California Chapters Conference, Indian Wells, California.

Fall 2003      Editor in Chief, AILA's 16th Annual California Chapters Conference Handbook.

Fall 2003      Speaker, AILA's 16th Annual California Chapters Conference, San Diego, California.

June 2003      Speaker, AILA National Conference, New Orleans, Louisiana.

June 2002      Speaker, AILA National Conference, San Francisco, California.

2001-2002      Treasurer, American Immigration Law Association, San Diego Chapter.

June 2001      Speaker, AILA National Conference, Boston, Massachusetts.

January 2001   Speaker, American Bar Association California Winter Meeting, Oakland, California.

Fall 2000      Editor in Chief, AILA's 12th Annual California Chapters Conference Handbook.

## PUBLICATIONS

*The Ninth Circuit Changes Course Regarding Visa Waivers and Immediate Relative Adjustments,* Immigration Law Today, pending.

*212(c): The relief that just won't go away,* (Published in the 20th Annual AILA California Chapters Conference Handbook, November 2007).

*Detention and Bond Issues in Immigration Law,* Immigration Law Today, Vol. 25, No. 6, November and December 2006.

*Immigration Judge War*, with Socheat Chea, (Published in the AILA 2006-2007 Immigration and Nationality Law Handbook, American Immigration Lawyers Association.), *reprinted*, Bender's Immigration Bulletin, August 15, 2006.

*The Notice of Appeal to the BIA: The Crucial First Step in the Appeals Process,* (Published in the 18th Annual AILA California Chapters Conference Handbook, November 2005).

*The Taylor and Modified Taylor Analysis – Does the crime fit the removal ground?* AILA's 16th Annual California Chapters Conference Handbook, November 2003.

*INA § 212(h): A Waiver Chiefly for Aspiring and Re-aspiring Permanent Residents*, Immigration & Nationality Law Handbook (2002-03 ed.). Copyright (c) 2002, American Immigration Lawyers Association.

*Expedited Removal: Too much Authority in Too Few Hands*, AILA 2002 Midyear Conference Handbook, Republished in Coming to America in Spring, AILA 2002.

*Detention and Bond*, AILA's 12th Annual California Chapters Conference Handbook, October 1999.


## PUBLISHED DECISIONS

*Beltran-Tirado v. INS*, 213 F.3d 1179 (9th Cir. May 31, 2000)

*Matter of Blancas-Lara*, 23 I. & N. Dec. 458 (BIA June 10, 2002)

*Tchoukhrova v. Gonzales,* 404 F.3d 1181 (9th Cir.  April 21, 2005), *vacated and remanded,* 127 S. Ct. 57 (2006).

*Lara-Cazares v. Gonzales,*  408 F.3d 1217  (9th Cir. May 23, 2005)

1    **GREGORY T. MURPHY**
California State Bar No. 245505
2    **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
3    San Diego, CA 92101-5008
(619) 234-8467/Fax: (619) 687-2666
4    E-Mail: gregory_murphy@fd.org

5    Attorneys for Alejandro Israel Villa-Anquiano

6

7

8                 UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10           **(HONORABLE WILLIAM Q. HAYES)**

11    UNITED STATES OF AMERICA,      )    Case No. 08CR1550-WQH
                                 )
12             Plaintiff,          )
                                 )
13    v.                              )    **CERTIFICATE OF SERVICE**
                                 )
14    ALEJANDRO ISRAEL VILLA-ANQUIANO,   )
                                 )
15            Defendant.       )
   _____ )
16

17        Counsel for Defendant certifies that the foregoing pleading is true and accurate to the best of his

18 information and belief, and that a copy of the foregoing document has been served this day upon:

19                           Caroline P. Han
        Caroline.Han@usdoj.gov, ginger.stacey@usdoj.gov, efile.dkt.gc1@usdoj.gov
20

21                               Respectfully submitted,

22

23    DATED:       August 18, 2008            /s/ Gregory T. Murphy
                                 **GREGORY T. MURPHY**
24                                  Federal Defenders of San Diego, Inc.
                                 Attorneys for Alejandro Israel Villa-Anquiano
25

26

27

28