1  KAREN P. HEWITT
   United States Attorney
2  CAROLINE P. HAN
   Assistant U.S. Attorney
3  California State Bar No. 250301
   United States Attorney's Office
4  880 Front Street, Room 6293
   San Diego, California 92101-8893
5  Phone: (619) 557-5220
   Fax: (619) 235-2757
6  E-mail: caroline.han@usdoj.gov

7  Attorneys for Plaintiff
   United States of America
8

9                  UNITED STATES DISTRICT COURT

10               SOUTHERN DISTRICT OF CALIFORNIA

11

12  UNITED STATES OF AMERICA,     )  Criminal Case No. 08CR1550-WQH
                                  )
13            Plaintiff,          )  **SUPPLEMENTAL BRIEFING IN OPPOSITION TO**
              v.                  )  **DEFENDANT'S MOTION TO DISMISS DUE TO**
14                                )  **INVALID DEPORTATION**
    ALEJANDRO ISRAEL              )
15          VILLA-ANQUIANO,       )
                                  )
16            Defendant.          )
                                  )  Date:  September 12, 2008
17                                )  Time: 10:00 a.m.
                                  )  Court: The Hon. William Q. Hayes
18
        COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel,
19
    United States Attorney, Karen P. Hewitt, and Assistant U.S. Attorney Caroline Han, and hereby files
20
    Supplemental Briefing in Opposition to Defendant's Motion to Dismiss Due to Invalid Deportation.
21
    This Supplemental Briefing is based upon the files and records of this case, together with the attached
22
    Statement of Facts and Memorandum of Points and Authorities.
23
    / /
24
    / /
25
    / /
26
    / /
27
    / /
28
    / /

1       As an initial matter, the Government renews all of its previous arguments as set forth in its

2   initial response in opposition to the defendant's motion to dismiss.  However, the Government is

3   seeking to supplement that response with this briefing.

4

5                                                    **I**

6                **DEFENDANT WAS DEPORTABLE AS AN AGGRAVATED FELON**

7       The defendant has argued that he was not deportable as an aggravated felon because the

8   record of conviction did not establish that he had been convicted of a "crime of violence."  A "crime

9   of violence" is defined pursuant to 18 U.S.C. § 16(a) as a crime that "has as an element, the use or

10  attempted use of physical force, or the threatened use of a deadly weapon."  18 U.S.C. § 16.   It is

11  also defined under subsection b as "any other offense that is a felony and that, by its nature, involves

12  a substantial risk that physical force against the person or property of another may be used in the

13  course of committing the offense." Id.

14      In order to determine if the defendant's prior conviction meets the definition of "crime of

15  violence" as set forth in 18 U.S.C. § 16, the Court must employ the two step approach set forth in

16  Taylor v. United States, 495 U.S. 575 (1990).  The first step, known as the categorical approach,

17  occurs when a court compares the statute's elements to the generic definition, in this case, of a

18  "crime of violence."  Under this analysis, a court is limited to the language of the statute and may

19  not review the underlying facts of the defendant's conviction. Id.  If the elements of the statute do

20  not meet the generic definition, then a court can employ the "modified categorical" approach.  Under

21  this approach, courts can review judicially noticeable facts as set forth in "the charging document,

22  written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge

23  to which the defendant assented" to determine if the defendant was actually convicted of an offense

24  which meets the generic definition.  United States v. Aguila-Montes de Oca, 523 F.3d 1071, 1074

25  (9th Cir. 2008) (citing United States v. Almazan-Becerra, 482 F.3d 1085 (9th Cir. 2007)(quoting

26  Shepard v. United States, 544 U.S. 13, 16 (2005)).  The United States renews its arguments that the

27  defendant's voluntary manslaughter conviction is categorically a crime of violence.  Should the

28  Court determine that it cannot determine that the defendant's conviction is a crime of violence under

1   the categorical approach, the United States contends that the conviction can be proven to be a crime

2   of violence if the modified categorical approach is employed as set forth below.

3

4                    *1.      Categorical Approach*

5           Under the categorical approach set forth in <u>Taylor</u>, the defendant's Voluntary Manslaughter

6   conviction meets the statutory definition set forth in 18 U.S.C. § 16(a) of having "an element, the use

7   or attempted use of physical force, or the threatened use of a deadly weapon." 18 U.S.C. § 16(a).

8   The defendant was convicted of Voluntary Manslaughter under California Penal Code § 192(a)

9   which defines the crime as the "unlawful killing of another human being without malice." Cal. Pen.

10  Code § 192.

11          In <u>Fernandez-Ruiz v. Gonzales</u>, 466 F.3d 1121 (9th Cir. 2006), the Ninth Circuit found that a

12  crime of violence in the context of an aggravated felony under 8 U.S.C. § 1101(a)(43) is a crime that

13  has an essential element of the intentional use of force.  In its decision, the Court analyzed an

14  Arizona simple assault statute in which it was possible to be guilty of assault when a person

15  committed conduct that did was not intentional, but was instead, reckless or negligent.  The

16  defendant argues that similarly, the crime of Voluntary Manslaughter as criminalized in the

17  California Penal Code cannot be categorically be a crime of violence because it encompasses

18  reckless conduct.  In support of its argument, the defendant cites to <u>People v. Lasko</u>, 999 P.2d 666

19  (Cal. 2000). Def. Opening Mtn.11.  In that case, the California Supreme Court considered a

20  conviction after trial in which the defendant was convicted of murder for an incident in which he

21  engaged in a fight with the victim who had a bat, the defendant took the bat from the victim and then

22  struck the victim in the head, killing him.  <u>Id.</u> at 668.  While the defendant has stated that the Court

23  found that the statute does not require the intentional application of force, the Court never reached

24  that issue.   Instead, the Court found that because the defendant lacked the intent to kill the victim,

25  he was guilty of voluntary manslaughter rather than murder. <u>Id</u>.  The Court adopted the view that

26  even a defendant who "without intending to kill the [victim], endanger[s] his life by very reckless

27  (depraved heart) conduct," is guilty of voluntary manslaughter. <u>Id.</u> at 672.

28          Even if voluntary manslaughter under the California Penal Code is categorically not a crime

                                                  3                                    08CR1550

1  of violence as defined under 18 U.S.C. § 16(a), it is a crime of violence as defined under 18 U.S.C. §

2  16(b).  Subsection b defines a crime of violence as "a felony and that, by its nature, involves a

3  substantial risk that physical force against the person or property of another may be used in the

4  course of committing the offense." 18 U.S.C. § 16(b).  The Ninth Circuit considered whether a

5  violation of California Penal Code § 452© is a crime of violence under 18 U.S.C. § 16(b) in the case

6  of Jordison v. Keisler, 501 F.3d 1134 (9th Cir. 2007).   California Penal Code § 452© prohibits

7  "unlawfully causing a fire of a structure or forest land." Cal. Pen. Code. § 452©.  A person

8  unlawfully causes a fire when "he recklessly sets fire to or burns or causes to be burned, any

9  structure, forest land, or property." Cal. Pen. Code. § 452.  The Court found that the statute was not

10  categorically a crime of violence because the statute did not require proof that the crime was

11  committed against property of another as 18 U.S.C. § 16 requires. Jordison at 1135.

12       While the Court did not consider the reckless mens rea required by the statute, the Court did

13  not conclude that the statute was not a crime of violence based upon the mens rea either.  That is, the

14  fact that the voluntary manslaughter statute allows for reckless conduct does not automatically

15  preclude the crime from being a crime of violence under 18 U.S.C. § 16(b).  In this case, the

16  voluntary manslaughter statute is just that kind of statute which includes a "substantial risk that

17  physical force will be used against a person." Id.  California's voluntary manslaughter statute

18  actually seemingly requires that physical force be used against a person in that it is defined as an

19  "unlawful killing of a human being without malice...upon a sudden quarrel or heat of passion."  Cal.

20  Pen. Code § 192.  That is, if a person committed the most reckless conduct which did not include

21  physical force against a person, that crime would be involuntary manslaughter, and not voluntary

22  manslaughter, because involuntary manslaughter under Cal. Pen. Code. § 192(b) is defined as an

23  "unlawful killing of a human being without malice" that is an act which can be either be unlawful, or

24  lawful as an act "which might produce death, in an unlawful manner, or without due caution or

25  circumspection." Cal. Pen. Code 192(b).  That is, it is clear that involuntary manslaughter is not

26  categorically a crime of violence, whereas voluntary manslaughter is in that it does require a

27  substantial risk that a defendant will use physical force against his or her victim.

28

1                    2.        *Modified Categorical Approach*

2          The defendant has argued that the Court cannot consider if the defendant's voluntary

3   manslaughter conviction is an aggravated felony under the modified categorical approach because

4   the defendant entered a plea of guilty to the charge of voluntary manslaughter pursuant to People v.

5   West, 477 P. 2d 409 (Cal. 1970). For this proposition, the defendant cites to United States v. Vidal,

6   504 F.3d 1072 (9th Cir. 2007).  In Vidal, the Court found that there was an insufficient record to

7   establish the facts to which the defendant plead guilty. Vidal at 1087.  In no way did the Court make

8   its decision based upon the fact that the plea was a West plea alone, but more specifically, the Court

9   decided the issue based upon the lack of a factual basis to determine the facts to which the defendant

10  admitted.

11         Even if Vidal stands for the proposition that a court cannot look past the statute of conviction

12  when a defendant pleads pursuant to West, the Court is not foreclosed from looking past the statute

13  of conviction in the instant case.  This is because a sufficient documentation exists in this case to

14  determine the facts to which the defendant admitted.  The defendant's plea agreement, a two page

15  document which includes the presiding judge's findings and order, demonstrates that the defendant

16  plead guilty pursuant to West to "PC 192(a) Vol Manslaughter as a L.I.O. of count 1." Gov't Ex. 14

17  at 1.  That is, the defendant plead guilty to voluntary manslaughter in violation of California Penal

18  Code § 192(a) as a lesser included count of count1 of the information filed initially which charged

19  the defendant with murder. Gov't Ex. 2.  Count 1 of the information filed in the defendant's case

20  describes the defendant's actions as: "On or about February 28, 1993, ALEJANDRO ISRAEL

21  VILLA did willfully and unlawfully murder GERARDO SOLIVEN, a human being..."  The

22  information further alleges that at the time of the commissions and attempted commission of the

23  above offense the said defendant, ALEJANDRO ISRAEL VILLA, was armed with a firearm, to wit,

24  a .38 caliber revolver, within the meaning of Penal Code section 12022(a)(1)." Gov't Ex. 2.

25         In addition, the second page of the plea agreement of the document states that the defendant

26  admits "that on the date charged under People v. West. Stip. To Prelim Transcript For Factual

27  Basis."  Gov't Ex. 1 at 2.  Thus, the defendant plead guilty pursuant to West, but he also stipulated

28  to a set of facts as part of the factual basis.  In addition, the "Court's Findings and Order" at the

1  bottom of the page state that the "The Court, having questioned the defendant concerning the

2  defendant's constitutional rights, finds that the defendant understands these rights and has

3  voluntarily and intelligently waived these constitutional rights.  The Court finds that the defendant's

4  plea and admissions are freely and voluntarily made, that the defendant understands the nature of the

5  charges and the consequences of the plea, and that there is a factual basis for the pleas.  The Court

6  accepts the defendant's plea, and the defendant is hereby convicted on the plea." Id. The findings

7  and order section also has the presiding judge's signature at the bottom. Id.

8        As stated above, the Court can look to any written plea agreement or factual finding made by

9  the trial judge in determining if the defendant was convicted of a crime of violence.  Aguila-Montes

10  de Oca at 1074.  In this case, it is clear that the defendant stipulated to the facts in the preliminary

11  hearing transcript based upon his signature on the plea agreement and the judges's findings as

12  indicated on the plea agreement. Gov't Ex.1.  The preliminary hearing transcript indicates that the

13  facts established at the preliminary hearing support a finding that when the defendant plead guilty,

14  he admitted to a set of facts that support a finding that he was convicted of an aggravated felony that

15  was a crime of violence. Gov't Ex. 3.  In sum, the facts established at the preliminary hearing were

16  that the defendant and his brother, Frank Villa, were members of a gang called IBS, Insane Boys,

17  Old Town National City. Ex. 6 at 84, 109 at the time of the underlying incident on February 28,

18  1993.  In addition, when the defendant was interviewed after his arrest, he told a District Attorney's

19  Office investigator that his brother, Frank, had been having problems with his girlfriend's ex-

20  boyfriend, and that they were going to the Plaza Bonita Mall, the site of the shooting, to confront the

21  boy. Id. at 106.  The defendant also told the investigator that he knew that his brother carried a gun,

22  and that he knew that his brother had a gun with him that day when they went to the mall, although

23  he did not see the gun. Id. at 107-08, 127.  In addition, witnesses testified that the defendant, his

24  brother, and a third person engaged in "mad dogging," an activity in which gang members attempt to

25  stare each other down and challenge each other to a fight, with the victim and his friend, Kenneth

26  Corros, prior to the shooting. Id. at 33-34, 37, 47, 53, 98, 104-05.  Immediately prior to the shooting,

27  the defendant and his brother approached the victim and Corros, while the third person who was

28  with the defendant and his brother stayed back. Id. at 40-41, 68.  The defendant punched Corros in

1  the head, asked Corros why he was trying to mad dog, and continued to hit and kick him after

2  Corros fell to the ground. Id. at 42-44, 71, 80-81.  At the same time, or immediately thereafter, Frank

3  Villa pulled a .38 caliber gun from his waistband and shot the victim twice, once in the abdomen and

4  once in the back. Id. at 42-43, 70, 79-82 , 105-06.  Thereafter, the defendant and his brother fled and

5  hid the gun. Id. at 108-09.  Based upon this information, it is clear that this Court can make a

6  determination of the facts to which the defendant plead guilty, and find that the defendant was

7  convicted of a crime of violence in that it included the use of physical force by the defendant and his

8  brother, the use of a dangerous weapon by the defendant's brother as aided and abetted by the

9  defendant.

10      For these reasons, it is clear that there was and there remains a sufficient factual basis to

11  demonstrate that the defendant was convicted of an aggravated felony.

12

13                                          **II**

14  **EVEN IF DEFENDANT WAS IMPROPERLY ADVISED OF HIS RIGHT TO COUNSEL,**

15                 **HE MUST STILL SHOW HE WAS PREJUDICED**

16      The Government renews its arguments that the defendant was not entitled to relief pursuant

17  to INA § 212(c) as set forth in its initial response to the defendant's motion to dismiss the indictment

18  to due to an invalid deportation.

19      However, should the Court find that the defendant was improperly advised of his right to

20  counsel in a group setting, the Court's inquiry does not end there.  The defendant must still show

21  that the deprivation of rights is prejudicial. United States v. Proa-Tovar, 975 F.2d 592, 595 (9th Cir.

22  1992).   The defendant argues that he is not required to show prejudice because as he argues, the

23  Ninth Circuit "has *never* failed to find prejudice in a case where the respondent was denied the right

24  to counsel." Def. Opening Mtn. 16.  However, what the defendant fails to note is that in each of the

25  cases that he has cited regarding a defendant's denial of his right to counsel, the courts have

26  considered and evaluated the defendant's circumstances to determine that the defendant was in fact

27  prejudiced.  For example, in United States v. Ahumada-Aguilar, 295 F.3d 923 (9th Cir. 2002) the

28  Court noted that the defendant had a claim that he was a United States citizen based on the fact that

                                            7                              08CR1550

1    his father was a United States citizen.  In finding that the defendant had been prejudiced, the court

2    specifically noted that the defendant was prejudiced the improper waiver of the right to counsel

3    because an attorney would have advised him not to concede deportability because his father was a

4    United States citizen and he had an additional equal protection claim. Id. at 951.  That is, while the

5    Court did not consider the requirement of showing prejudice, it carefully weighed the defendant's

6    situation and even noted that it was declining to consider the requirement because prejudice was so

7    clear based on the facts presented. Id. at 950.

8            The defendant has also cited to United States v. Ram, 529 F.3d 1238, 1242-43 (9th Cir. 2008)

9    as a case where the defendant did not affirmatively waive his right to counsel, and the court found

10   prejudice.  However, that case was a direct appeal from a BIA decision.  As such, the issue of

11   whether or not the defendant needs to show prejudice when collaterally attacking his deportation

12   based upon a motion to dismiss under 8 U.S.C. § 1326(d) would not have ever arisen in Ram, and

13   thus the case cannot be cited as another example of the Court finding prejudice in every instance

14   where a defendant has not affirmatively waived his right to counsel.

15           Moreover, the issue of prejudice in the defendant's case is not clear at all.  This is because,

16   unlike the defendant in Ahumada-Aguilar who had a potential derivative citizenship claim that he

17   raised both at his hearing before an immigration judge and in his collateral attack of the deportation

18   under 8 U.S.C. § 1326(d) or the defendant in Ram who had made the affirmative move to assert his

19   right to counsel and whose case was being reviewed on direct appeal, a violation of this defendant's

20   due process rights is not so clear cut.  That is because the defendant claims that he was prejudiced in

21   that he was entitled to relief, relief that is merely discretionary, under INA §§ 212(c) and 212(h).  In

22   addition to merely being discretionary relief, the defendant was not entitled to relief under either

23   section.  That is because as previously discussed, defendant was a lawful permanent resident prior to

24   his aggravated felony, and was thus not eligible for relief under 212(h).  Moreover, he did not have

25   plausible grounds for relief under 212(c), placing him in a distinct position from the defendant in

26   Ahumada-Aguilar.

27   / /

28

08CR1550

1

**III**

2

**DEFENDANT WAS NOT ENTITLED TO RELIEF UNDER 212**(c)

3       As an initial matter, the defendant argues that he need not show prejudice because the

4   defendant was not deportable, but as discussed above, he was deportable as charged in the Order to

5   Show Cause because the defendant's conviction qualified as a crime of violence.

6       The defendant also argues that in order to demonstrate prejudice, the defendant needs only

7   demonstrate that the deprivation of his right to counsel "potentially affected the outcome of the

8   proceedings" and cites to Ram at 1242. Def. Reply Brief 5.  The defendant is incorrect about the

9   showing that he must make in order to demonstrate prejudice.  The defendant actually needs to

10   demonstrate that "he had plausible grounds for relief." Ahumada-Aguilar at 951.  Ram is a case in

11   which the defendant directly appealed a decision from the Board of Immigration Appeals, whereas

12   Ahumada-Aguilar, like the defendant's case, is case in which the defendant had been prosecuted for

13   a violation of 8 U.S.C. § 1326 and had moved to dismiss his indictment based upon an invalid

14   deportation in a collateral attack.  As such, it is clear that the defendant is required to demonstrate

15   that his grounds for relief were "plausible."  Moreover, because of the defendant's serious criminal

16   record, he would also be required to demonstrate "unusual or outstanding equities" to receive relief

17   under 212(c), a burden that is far more stringent than the burden which the petitioner in Ram faced

18   and which has been advanced by the defendant. See United States v. Gonzalez-Valerio, 342 F.3d

19   1051, 1056-57 (9th Cir. 2003).

20       In his reply to the Government's response in opposition to the defendant's motion, the

21   defendant argues that the Government mischaracterized the defendant's personal history in the

22   Government's response.  In fact, the Government's response does not mischaracterize the

23   defendant's personal history, but instead merely evaluates the defendant's personal history in light

24   of the high burden the defendant bears as part of his motion.  This is especially true in light of other

25   defendants who, having demonstrated more compelling factors, have had their claims rejected. See,

26   e.g., Ayala-Chavez v. INS, 944 F.2d 638 ((9th Cir. 1991) (upholding BIA's finding that no

27   outstanding equities had been demonstrated where the petitioner had demonstrated 18 years of

28   residence, family resided near him, he had a daughter, and his family testified on his behalf).  Based

1   on this, the Government reiterates its prior analysis, and renews its argument that the defendant has

2   not met his burden.

3                                           **IV**

4                 **THE COURT SHOULD NOT CONSIDER**

5         **DEFENDANT'S PROFFERED EXPERT OPINION DECLARATION**

6       In support of his motion, the defendant has offered an expert declaration made by an

7   immigration attorney, Jonathan Montag.  The admissibility of expert testimony is governed by

8   Federal Rule of Evidence 702.  Rule 702 allows testimony only by experts qualified by "knowledge,

9   skill, expertise, training, or education, to testify "in the form of an opinion or otherwise" based on

10   "scientific, technical, or other specialized knowledge" if that testimony will "assist the trier of fact to

11   understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.

12       Mr. Montag's resume indicates that he has been working in immigration law for

13   approximately 14 years, and his declaration essentially reiterates the facts and arguments set forth in

14   the defendant's initial motion.  As such, the declaration does not add any new additional facts or

15   arguments for the Court to consider, and the Court should reject the declaration as duplicative.  In

16   addition to supplying duplicative information, the declaration also includes Mr. Montag's

17   conclusion that, "A reasonable immigration judge could have found these equities outweighed some

18   ambiguous negative ones. It is plausible he would have been granted relief."  In addition, Mr.

19   Montag adds that, "The facts of this case are not out of line with others where [212(c)] relief has

20   been granted."  Mr. Montag's declaration includes conclusions that seek to answer the ultimate

21   question or decision presented to the Court – the issue of whether or not the defendant can

22   demonstrate that he had plausible grounds for relief under 212(c).  As such, the Court should reject

23   the portion of the declaration which seeks to decide the ultimate issue or the Court in the defendant's

24   motion. See Aguilar v. International Longshoremen's Union,966 F.2d 443, 447 (9th Cir. 1992)

25   (finding that issues which were matters of law for the court's determination were not proper subjects

26   for expert testimony) (citing Marx v. Diners Club, Inc., 550 F.2d 505, 509 (2nd Cir. 1977).

27       Should the Court consider Mr. Montag's declaration, the United States requests that the

28   Court not attribute any more significance to the declaration than necessary. See, e.g., United States

1  v. Muro-Inclan, 249 F.3d 1180, 1186, n.4 (9th Cir. 2001) (finding that while an attorney's expert

2  opinion has some weight, it "is not independently sufficient to overcome the otherwise insufficient

3  showing of plausible extreme hardship."). Mr. Montag, although experienced in the field of

4  immigration, is biased to the extent that he has and continues to represent petitioners who are

5  seeking discretionary relief under 212(c). In addition, while he stated that it was plausible that the

6  defendant would have been granted to relief, he has not provided any factual assertions to support

7  his position except for a general reference to his experience, which is undoubtedly extensive.

8  However, it is nearly impossible to respond to his assertions because the experiences and the details

9  of the information upon which he bases his opinion is completely unknown to the Government.

10  Were he to highlight details from his experience as an immigration attorney, the basis for his

11  expertise would be illuminated and the Government could then respond accordingly. Without

12  details, the Government cannot adequately respond to his declaration. As such, should the Court

13  find that Mr. Montag's declaration meets the requirements of Rule 702, is not duplicative, and

14  should be considered by the Court, the United States respectively requests the opportunity to cross

15  examine Mr. Montag in an evidentiary hearing.

16                                                     **V**

17                                            **CONCLUSION**

18        For the foregoing reasons, the Government requests that the Court deny the defendant's

19  motion to dismiss the indictment based upon an invalid deportation.

20

21        DATED: August 27, 2008

22

                                              Respectfully submitted,
23
                                              KAREN P. HEWITT
24                                            United States Attorney

25        /s/ *Caroline P. Han*
                                              CAROLINE P. HAN
26                                            Assistant United States Attorney
                                              Attorneys for Plaintiff
27                                            United States of America

28

                                              11                              08CR1550

1    UNITED STATES DISTRICT COURT

2    SOUTHERN DISTRICT OF CALIFORNIA

3    UNITED STATES OF AMERICA,            )    Criminal Case No. 08CR1550-WQH
                                          )
4                          Plaintiff,     )
                                          )    CERTIFICATE OF SERVICE
5              v.                         )
                                          )
6    ALEJANDRO ISRAEL                     )
                 VILLA-ANQUIANO,          )
7                          Defendant.     )
                                          )
8    ─────────────────────────────────   )

9    IT IS HEREBY CERTIFIED THAT:

10        I, Caroline P. Han, am a citizen of the United States and am at least eighteen years of age.
11   My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.
          I am not a party to the above-entitled action.  I have caused service of **SUPPLEMENTAL**
12   **BRIEFING IN RESPONSE TO THE DEFENDANT'S MOTION TO DISMISS BASED UPON**
     **AN INVALID DEPORTATION** on the following parties by electronically filing the foregoing
13   with the Clerk of the District Court using its ECF System, which electronically notifies them:

14        Gregory Murphy
          *Attorneys for the defendant*

15
          I hereby certify that I have caused to be mailed the foregoing, by the United States Postal
16   Service, to the following non-ECF participants on this case:

17        None

18   the last known address, at which place there is delivery service of mail from the United States
     Postal Service.

19
          I declare under penalty of perjury that the foregoing is true and correct.

20
          Executed on August 27, 2008.

21
                                         /s/ **Caroline P. Han**
22                                       ─────────────────────────
                                         CAROLINE P. HAN
23

24

25

26

27

28

                                            12                           08CR1550