1 **GREGORY T. MURPHY**
California State Bar No. 245505
2 **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
3 San Diego, CA 92101-5008
(619) 234-8467/Fax: (619) 687-2666
4 E-Mail: gregory_murphy@fd.org

5 Attorneys for Alejandro Israel Villa-Anquiano

6

7

8                          UNITED STATES DISTRICT COURT

9                        SOUTHERN DISTRICT OF CALIFORNIA

10                        **(HONORABLE WILLIAM Q. HAYES)**

11 UNITED STATES OF AMERICA,          )   Case No. 08CR1550-WQH
                                      )
12          Plaintiff,                )   DATE:        September 12, 2008
                                      )   TIME:        10:00 a.m.
13 v.                                 )
                                      )   **MR. VILLA-ANGUIANO'S SECOND REPLY**
14 ALEJANDRO ISRAEL VILLA-ANQUIANO,   )   **TO THE GOVERNMENT'S RESPONSE IN**
                                      )   **OPPOSITION**
15          Defendant.                )
   _____)

16

17          Alejandro Villa-Anguiano, through undersigned counsel Gregory T. Murphy and Federal Defenders

18 of San Diego, Inc., submits the following reply to the government's supplemental response in opposition to

19 Mr. Villa's motion to dismiss the indictment.

20                                      **I.**

21                           **OVERVIEW OF ISSUES**

22          The parties disagree whether Mr. Villa was deportable.  Government's Supplemental Briefing

23 ("GR2") at 2.  The government does not dispute the Order to Show cause erred by charging Mr. Villa with

24 deportability based on a firearm conviction, but avers that Mr. Villa's voluntary manslaughter conviction was

25 a "crime of violence" rendering him deportable as an aggravated felon. *Id*.

26          The government apparently no longer disputes the "mass silent waiver" of the right to counsel

27 violated Mr. Villa's right to due process by depriving him of his right to counsel in immigration proceedings.

28 GR2 at 7.

1   The parties also appear to agree that Mr. Villa was statutorily eligible for relief from deportation

2   pursuant to INA § 212(c). GR2 at 8.  The parties disagree whether Mr. Villa was eligible for relief under INA

3   212(h). *Id*.

4   Mr. Villa contends that a violation of the right to counsel requires no showing of prejudice.  If Mr.

5   Villa bears any burden to show prejudice, the parties disagree on the requirements to establish prejudice. GR2

6   at 9.  The government contends that Mr. Villa cannot establish he was prejudiced by the due process violation

7   because he has not shown that an immigration judge could have balanced the equities in his favor.  *Id*. Mr.

8   Villa contends he has established prejudice under any proffered standard.

9   **II.**

10  **MR. VILLA WAS NOT DEPORTABLE AS AN AGGRAVATED FELON**

11  The government argues that "even if voluntary manslaughter under the California Penal Code is

12  categorically not a crime of violence as defined under 18 U.S.C. §16(a), it is a crime of violence as defined

13  under 18 U.S.C. §16(b) because, "by its nature," voluntary manslaughter "involves a substantial risk that

14  physical force...may be used in the commission of the offense."  In the event the Court concludes voluntary

15  manslaughter is not categorically an aggravated felony, the government asserts that judicially noticeable

16  documents establish that Mr. Villa was not convicted of a reckless killing.

17  **1.    Voluntary Manslaughter is Not Categorically a "Crime of Violence"**

18  The government's argument that the application of 18 U.S.C. § 16(b) leads to a different result than

19  § 16(a) is foreclosed by *Leocal v. Gonzales*, 543 U.S. 1, 11 (2004), in which the Supreme Court held that the

20  word "use" in both subsections requires the defendant evince "a higher *mens rea* than merely accidental or

21  negligent conduct." *Id*. at 11 ("While § 16(b) is broader than § 16(a) in the sense that physical force need not

22  actually be applied, it contains the same formulation we found to be determinative in § 16(a): the use of

23  physical force against the person or property of another. Accordingly, we must give the language in § 16(b)

24  an identical construction.").  Therefore, while the Supreme Court accepted that drunk driving is volitional

25  conduct that "by its nature" carries a substantial risk that the car will cause injury, the Court rejected the

26  argument that drunk driving was a "crime of violence" under either 16(a) or (b) because drunk driving--

27  however irresponsible--requires no *intention* to cause the resulting harm. *Id* at 10.

28  Subsequently, the Ninth Circuit, in an *en banc* decision, applied *Leocal*'s holding to find that a

1 mental state of recklessness was insufficient to qualify as active employment of violence and recognized that

2 *Leocal* requires the higher mens rea of purposeful action. *See United States v. Fernandez-Ruiz*, 466 F.3d

3 1121, 1132 (9th Cir. 2006)("The bedrock principle of *Leocal* is that to constitute a federal crime of violence

4 an offense must involve the intentional use of force . . . ."). The Ninth Circuit concluded recklessness was not

5 enough because it included conduct "whereby the actor does not desire harmful consequence but nonetheless

6 foresees the possibility and consciously takes the risk." *Id*. at 1130.  In reaching its conclusion,

7 *Fernandez-Ruiz* adopted the analysis of the Third Circuit, which requires a showing of "the intentional

8 employment of . . . force," not just the "mere occurrence of force" to qualify as a crime of violence. *See id.*

9 at 1128-29 (citing *Oyebanji v. Gonzales*, 418 F.3d 260 (3d Cir. 2005), and *Tran v. Gonzales*, 414 F.3d 464

10 (3d Cir. 2005)).  The mere "subjective awareness of possible injury is not the same as the intentional use of

11 physical force against the person of another." *Id*. at 1130.  Because "[r]eckless conduct, as generally defined,

12 is not purposeful," it does not meet *Leocal*'s heightened mens rea requirement for crimes of violence.  *Id*.

13 Accordingly, the Ninth Circuit held Arizona's domestic violence statute, which "permits conviction when a

14 defendant **recklessly but unintentionally** causes physical injury to another," does not qualify categorically

15 as a "crime of violence."  *Id*. at 1123, 1131.

16        California manslaughter is no different.  Here, as the government properly concedes, GR2 at 3,

17 California permits a conviction for voluntary manslaughter when a defendant acts with a "conscious

18 disregard" for the possibility of death. *See People v. Garcia*, 74 Cal. Rptr.3d 912, 918 (Ct. App. 2008))

19 ("When defendant, acting with conscious disregard for life, **unintentionally but unlawfully** kills in sudden

20 quarrel or heat of passion, killing is voluntary manslaughter.")(citing *People v. Lasko*, 999 P.2d 666 (Cal.

21 2000)).  Like drunk driving or domestic violence, therefore, voluntary manslaughter requires volitional

22 conduct--potentially (but not necessarily) even harmful conduct--but does not require the defendant act with

23 the intent to cause any particular harm.[1]  Pursuant to *Leocal*, therefore, voluntary manslaughter is not

24

25        [1]The government opines that reckless conduct that does not include physical force against
26 the person of another is involuntary manslaughter.  GR2 at 4.  In fact, the principal difference
between the two versions of manslaughter is that the more serious offense, voluntary
27 manslaughter, requires *conscious* disregard of the risk of harm and the violation of duty toward
the victim, whereas involuntary manslaughter lies when the violation of care is *unconscious* and
28 is merely criminally negligent. *Compare Garcia*, 74 Cal.Rptr.3d at 918 ("Involuntary
manslaughter ...requires proof of criminal negligence.") with *Lasko*, 999 P.2d at 668)(Defendant

3

1 categorically a "crime of violence" under either subsection of 18 U.S.C. § 16.

2      **2.      No Judicially Noticeable Documents Establish Mr. Villa was convicted of an**
       **Intentional Killing**

3

4      The documents attached to the government's pleading do not establish that Mr. Villa intended the

5 killing of another person. Indeed, taking the government's summation as true, see GR2 at 6-7, the documents

6 do not even identify the theory of culpability. It is not clear, for example, whether Mr. Villa's conduct in

7 throwing a punch evinced a conscious disregard for the possibility his brother would shoot someone, or if his

8 assault is predicated on a misdemeanor/felony manslaughter theory, or if he aided and abetted a killing. *See*

9 *People v. West*, 3 Cal.3d 595, 611-12 ("The court may accept a bargained plea of guilty or nolo contendere

10 to *any lesser offense reasonably related* to the offense charged in the accusatory pleading.)(emphasis added).

11 Regardless, nothing in the documents furnished by the government suggests Mr. Villa intended to use force

12 to kill or was anything but reckless with respect to the possibility that his brother would use force to kill.

13 *Compare Leocal*, 543 U.S. at 10, n.6 ("The risk that an accident may occur when an individual drives while

14 intoxicated is simply not the same thing as the risk that the individual may "use" physical force against

15 another *in committing the DUI offense*.")(emphasis added). Because a "crime of violence" cannot be based

16 on a reckless disregard for the possibility force will be used to cause a particular harm, and because there is

17 no evidence Mr. Villa intended the harm underlying his conviction, Mr. Villa was not convicted of an

18 aggravated felony and was not deportable as charged.

19                                        **III.**

20                  **THE GOVERNMENT'S ARGUMENTS REGARDING**
                **INA § 212(c) RELIEF ARE UNPERSUASIVE AND INACCURATE**

21

22     In its most recent filing, the government "renews its arguments that the defendant was not entitled

23 to relief pursuant to INA 212(c) as set forth in its initial response to the defendant's motion to dismiss the

24 indictment." GR2 at 7. The government errs by renewing these "arguments" because they are based on

25 multiple inaccurate statements of law.

26     In its initial response, the government claimed that a person "deportable as an aggravated felon"

27

28 who, without intending to kill the [victim], endanger[s] his life by very reckless...conduct," is
   guilty of manslaughter.). The difference is between criminal negligence and recklessness; not
   intent and lack of intent.

4

1 cannot receive relief under INA § 212(c). GR1 at 6.  As noted previously, however, that argument is

2 foreclosed by the language of § 212(c) itself.  *See* 8 U.S.C. §1182(c)(1994)(Permitting respondent to waive

3 aggravated felonies for which he served fewer than five years).  The government then cited two pre-*Leocal*

4 cases that address the guideline definition of crime of violence. GR1 at 6. The government did not state–and

5 does not now acknowledge--that the Ninth Circuit overruled one of those two cases, *United States v. Trinidad-*

6 *Aquino,* 259 F.3d 1140, 1146 (9th Cir. 2001), specifically rejecting the holding on which the government

7 relies.  *See Fernandez-Ruiz ,* 466 F.3d at 1126 (In *Trinidad-Aquino*, "[w]e held that crimes of recklessness

8 could be crimes of violence...In light of *Leocal*, we expressly overrule our cases holding that crimes of

9 violence under 18 U.S.C. § 16 may include offenses committed through the reckless, or grossly negligent, use

10 of force.").  Similarly, the government argued at length that Mr. Villa could not qualify for § 212 (c) relief

11 because he could not show "extreme hardship" to his family members, GR1 at 9-10.  In fact, § 212(c)--unlike

12 212(h)--requires only the lesser showing of "hardship."  The government failed to note this lesser burden

13 before and does not concede it now.  In fact, the government's pleading now expressly adopts the earlier,

14 erroneous analysis.  *See* GR2 at 10 ("The Government reiterates its prior analysis.").

15        The government's more recent pleading offers additional mis-statements of law. In particular, the

16 government repeatedly suggests--without citation--that the "prejudice" needed to show a due process violation

17 in a collateral attack is a different "prejudice" than that needed on direct appeal.  *See* GR2 at 8, 9.  No court

18 has so held.  Moreover, the government's argument ignores a universe of precedent--including the cases the

19 government itself cites--in which courts addressing either collateral attacks or direct appeals cite each other

20 when discussing prejudice.  *See, e.g., United States v. Ahumada-Aguilar*, 295 F.3d 951 (9th Cir. 2005) ("It

21 remains unsettled in this circuit whether a showing of prejudice must be made where the right to counsel has

22 effectively been denied a respondent in a deportation hearing.")(citing *Baires v. INS*, 856 F.2d 89, 91 n. 3 (9th

23 Cir.1988)(direct apeal)[2]; *Colindres-Aguilar v. INS*, 819 F.2d 259, 262 (9th Cir.1987)(direct appeal);

24 *Rios-Berrios v. INS*, 776 F.2d 859, 863 (9th Cir.1985)(direct appeal)); *Ram v. Mukasey,*529 F.3d 1238, 1244

25

26        [2]It appears the circuits are split on whether a defendant deprived of a regulatory right

27 (such as the right to counsel) need show prejudice.  The 2nd, 7th, and D.C. circuits hold that a
respondent deprived of the right to counsel need not show prejudice.  The 4th, 5th, and 10th

28 circuits disagree. *See Baltazar-Alcazar v. I.N.S.,* 386 F.3d 940, 947 n.6 (9th Cir. 2004)(collecting
cases).

5

1  n. 1 (9th Cir. 2008) ("Because we conclude that Ram's due process rights were violated, we need not reach

2  the question, which was neither briefed nor argued, of whether the violation of the statutory or regulatory right

3  to counsel requires a showing of prejudice.")(citing *United States v. Ahumada-Aguilar*, 295 F.3d 943, 950 (9th

4  Cir.2002)(collateral attack)).  This cross-referencing makes sense because the issue before the reviewing court

5  on both collateral attack and on direct appeal is whether the respondent's earlier immigration proceeding

6  satisfied the Fifth Amendment's guarantee of due process.  *Compare Ram*, 529 F.3d at 1241 ("[I]n order to

7  prevail upon his due process claims, Ram must establish that: (1) he has been denied due process and (2) the

8  denial of his due process rights prejudiced him") *with United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048

9  (9th Cir. 2004)(an underlying removal order is "fundamentally unfair" if: (1) a defendant's due process rights

10  were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result

11  of the defects.")(internal citations omitted).  The Court therefore should decline the government's invitation

12  to ignore binding Ninth Circuit authority describing when prejudice results from the violation of the right to

13  counsel.

14       Similarly, the government does not correctly report the facts of *Ahumada-Aguilar*, a case with facts

15  closely on point to Mr. Villa's.  GR2 at 7-8.  Specifically, although the government argues to the Court that

16  the defendant in *Ahumada-Aguilar* had a stronger case for prejudice because he "had a potential derivative

17  citizenship claim," *id*., government counsel fails to note that because Ahumada-Aguilar's derivative

18  citizenship claim would have failed, *Ahumada-Aguilar* 295 F.3d at 951, the Ninth Circuit explicitly based its

19  prejudice finding on the defendant's potential future eligibility for §212(c). *Id*. at 952.  That, of course, is the

20  same relief Mr. Villa was eligible to seek.

21       The government's flawed reporting of the facts of *Ahumada-Aguilar* is important because it obscures

22  the fact that Mr. Villa was much *more* likely to have been granted relief than Ahumada-Aguilar.  Mr. Villa,

23  unlike the respondent in *Ahumada-Aguilar*, was statutorily eligible for INA § 212(c) relief at the time of his

24  deportation hearing.  Accordingly, it was not necessary for Mr. Villa to litigate a non-frivolous claim to

25  derivative citizenship in order to accrue time to qualify for 212(c) relief.  *Compare Ahumada-Aguilar*, 295

26  F.3d at 951 ("A competent attorney would have urged him to press an appeal in order to accrue the final ten

27  months necessary for him to qualify for a discretionary waiver of deportation.").  Moreover, while both Mr.

28  Villa and the defendant in *Ahumada-Aguilar* would have been subject to the "unusual or outstanding equities"

1  standard, s*ee Ayala-Chavez v. U.S. I.N.S.*, 944 F.2d 638 (9th Cir. 1991), Ahumada-Aguilar had multiple

2  convictions (for residential burglary and possession of cocaine) while Mr. Villa had only one.  Accordingly,

3  the government's bare assertion that Mr. Villa "did not have plausible grounds for relief under 212(c), placing

4  him in a distinct position from the defendant in *Ahumada-Aguilar*" GR2 at 8, is simply not supported by the

5  facts of that case.

6         The government's claim that Mr. Villa could not qualify for INA  § 212(c) relief rests on multiple

7  misstatements of law and an apparent misunderstanding of the requirements for that relief.  As such, the

8  government's arguments are unpersuasive and should be rejected by this Court.

9                                              **V.**

10         **MR. VILLA HAS ESTABLISHED PREJUDICE AS A MATTER OF LAW**

11         In *Ram v. Mukasey*, 529 F.3d 1238, 1243 (9th Cir. 2008), the Ninth Circuit held the respondent

12  established prejudice because the immigration record was insufficient for the government to meet its

13  burden of showing he had been convicted of an aggravated felony.  *Ram*, 529 F.3d at 1243.  In light of the

14  government's recent admission that the judicially noticeable documents attached its most recent pleading

15  were not in Mr. Villa's A-file, s*ee* Docket 28, *Ram* decides the issue of prejudice in Mr. Villa's favor.

16  That is: even if the Court concludes those documents show Mr. Villa admitted to the requisite mens rea

17  for a crime of violence, *Ram* compels this Court to find prejudice on the theory that "an attorney would

18  have helped [Mr. Villa] understand his criminal record as well as his legal rights and evidentiary burden,

19  so that he would not have admitted to allegations and charges that...the DHS could not substantiate with

20  proper documentation" at his hearing. *Ram*, 529 F.3d at 1243.

21                                              **VI.**

22         **THE GOVERNMENT MISUNDERSTANDS "PREJUDICE"**

23         By repeating the erroneous, unsupported assertion that "prejudice" has a different meaning in a

24  collateral attack than on direct appeal, the government attempts to convince the Court that Mr. Villa must

25  show relief was "plausible" and not that the absence of an attorney "potentially affected the outcome of

26  the proceedings." *Ram v. Mukasey*, 529 F.3d 1238, 1242 (9th Cir. 2008).  This, the government believes,

27  is an unattainable burden for Mr. Villa.

28         The two standards are the same. *See Walters v. Reno*, 145 F.3d 1032 (9th Cir. 1998) ("When it is

1  necessary to demonstrate prejudice as a result of a constitutional violation, the alien must show that the

2  inadequate procedures occurred in a manner so as potentially to affect the outcome of the proceedings.

3  Ordinarily, there must be plausible scenarios in which the outcome of the proceedings would have been

4  different, absent the constitutional violation.")(Citing *United States v. Jimenez-Marmolejo*, 104 F.3d 1083,

5  1086 (9th Cir.1996) for the proposition that "an alien need not prove that he would not have been

6  deported, just that he had "'plausible grounds for relief'")).  However, the Ninth Circuit has held that a

7  respondent who is deprived of the right to counsel meets this standard without showing what evidence a

8  "competent attorney" would have presented.  *See Hernandez-Gil v. Gonzales*, 476 F.3d 803, 806 (9th Cir.

9  2007)(Respondent "need not explain exactly what evidence he would have presented in support of his

10 application.").  Instead, under Ninth Circuit law, the defendant deprived of his right to counsel shows

11 prejudice simply by establishing there were avenues of relief available for an attorney to explore.  *See*

12 *Ram*, 529 F.3d at 1243 (Prejudice established because respondent was eligible for cancellation of removal,

13 asylum, and withholding of removal); *Hernandez-Gil*, 476 F.3d at 809 (Prejudice established because

14 "with an attorney, Hernandez-Gil could have better presented evidence demonstrating extreme hardship

15 for his sons, and he would not have had to answer the IJ's questions without any idea of their legal

16 significance."); *Biwot v. Gonzales*, 403 F.3d 1094, 1100 (9th Cir. 2005)(Declining to consider merits of

17 asylum claim, but holding that prejudice established because "[w]ith an attorney, he would not have been

18 forced to proceed pro se, to present a case with no evidence, to answer the IJ's inquiries without any idea

19 of their legal significance, or to purport unwittingly to waive his appeal."); *Ahumada-Aguilar*, 295 F.3d at

20 952 ("With the assistance of counsel, Ahumada-Aguilar would have had the opportunity to present

21 evidence that he was entitled to relief from deportation after he had exhausted an appeal from the

22 deportation order. Thus, he was prejudiced by these due process violations.").

23          Although the Court could grant Mr. Villa's motion on many legal grounds, these cases describe a

24 comparatively uncontroversial path.  The parties essentially agree that the (1) the mass silent waiver of the

25 right to counsel in Mr. Villa's deportation proceeding deprived him of due process and (2) at the time of

26 his hearing, Mr. Villa was statutorily eligible for relief from deportation pursuant to INA § 212(c).

27 Therefore, the Court need only follow the lead of *Ram*, *Biwot*, *Hernandez-Gil*, and *Ahumada-Aguilar* to

28 determine (3) that Mr. Villa has satisfied any prejudice burden that may exist.

1                                       **VII.**

2      **MR. VILLA HAS ESTABLISHED PREJUDICE UNDER ANY PROFFERED STANDARD**

3              Mr. Montag's declaration summarizes the facts in the record before the Court, and Mr. Villa

4   adopts that discussion here.  *See* Docket 26.  In sum, Mr. Villa's positive equities include his long

5   residence, family ties, including a child, a substantial work history, evidence of good character, remorse

6   and rehabilitation.  Negative equities include his voluntary manslaughter conviction--in which he was a

7   passive participant in the killing--and his juvenile record of three adjudications as a young teen.  In

8   comparison to other cases in his eighteen years of representing "aggravated felons who have been granted

9   212(c) relief," Mr. Montag concludes "the facts of [Mr. Villa's] case are not out of line with others where

10  relief has been granted."[3]

11             The government proffers no contrary evidence.  Instead, as its sole authority for the contention

12  that Mr. Villa could not have established "unusual or outstanding equities," the government cites two

13  cases that fail to find an abuse of discretion in the denial of  § 212(c) relief on much different records.[4]

14  *See* GR2 at 9*;* GR1 at  9 (c*iting  Ayala-Chavez*, 944 F.2d at 642, and *Zaluski v. INS*, 37 F.3d 72 (2d Cir.

15  1994)(Affirming because "we will only find an abuse of discretion where the decision was made without a

16  rational explanation, inexplicably departed from established policies, or rested on an impermissible basis

17  such as an invidious discrimination against a particular race or group.").  Such, however, is the nature of

18  discretionary relief.  Mr. Villa does not contend--and need not prove--that no IJ would have denied him §

19  212(c) relief.  He simply asserts, and has amply shown, that  "*an* IJ *could have concluded* that his potential

20  claim for relief from deportation would be plausible."  *United States v. Pallares-Galan*, 359 F.3d 1088

21  (9th Cir. 2004)(emphasis added).

22             Further, the Court need not take Mr. Montag's word that § 212(c) relief was plausible because it

23  is clear at least one other respondent with similar equities and a worse criminal history than Mr. Villa was

24  _____

25          [3]Mr. Villa offers to make Mr. Montag available for cross-examination by the government.

26          [4]Again, the government's citations prove untrustworthy.  In addition to the two cases
27  discussed above, the government cites *Agustin v. INS*, 700 F.2d 564 (9th Cir. 1983) for the
    proposition that "the existence of [family ties] fails to distinguish defendant in any 'unusual' way
28  from many other Section 212(c) applicants."  GR1 at 9.  *Agustin*, however, does not involve a
    212(c) applicant, and therefore does not stand for the proposition for which it is cited.

1 | granted that relief. *See Nguyen v. I.N.S.*, 127 F.3d 1106 (9th Cir. 1997)(unpublished) (IJ granted 212(c)

2 | relief to alien with multiple convictions, including for voluntary manslaughter, because alien had "had

3 | demonstrated outstanding family ties, a long duration of residence, a favorable parole report, and

4 | remorseful behavior."). Because Mr. Villa "is entitled to the dismissal of his indictment if, upon a review

5 | of the record, it appears that *an IJ could have concluded* that his potential claim for relief from deportation

6 | would be plausible," *Pallares-Galan*, 359 F.3d 1088, and because *Nguyen* tells us that at least one IJ did

7 | so conclude, Mr. Villa was prejudiced as a matter of law.[5]

8

## VIII

9

## CONCLUSION

10    For the foregoing reasons, and for the reasons stated in his previously filed motion and reply, Mr.

11 | Villa respectfully asks the Court to grant his motion.

12                                     Respectfully submitted,

13 | DATED:        September 4, 2008        /s/ Gregory T. Murphy
                                          GREGORY T. MURPHY
14                                        Federal Defenders of San Diego, Inc.
                                          Attorneys for Alejandro Israel Villa-Anquiano

15

16

17

18

19

20

21

22

23

24

25

26 _____

27    [5]The Ninth Circuit has held in a different context that the existence of one comparable
   unpublished case establishes a "realistic probability" that the same facts will support future
28 | prosecutions. *See Nicanor-Romero v. Mukasey*, 523 F.3d 992, 1005 (9th Cir. 2008). The same
   logic should control here.